**UNITED STATES of America,**
**Plaintiff,**

v.

**EL PASO NATURAL GAS COMPANY**
**and Pacific Northwest Pipeline**
**Corporation, Defendants.**

**Civ. No. 143-57.**

United States District Court
D. Utah,
Central Division.

Jan. 22, 1965.

William T. Thurman, U. S. Atty., Dist. of Utah, Salt Lake City, Utah, Larry Williams, Jack Louis Lipson, Dept. of Justice, Washington, D. C., for the United States.

Gregory A. Harrison, Brobeck, Phleger & Harrison, San Francisco, Cal., Arthur H. Dean, New York City, Van Cott, Bagley, Cornwall & McCarthy, Salt Lake City, Utah, for defendant.

RITTER, Chief Judge.

After hearing in this court in a proceeding to frame a decree of divestiture pursuant to United States v. El Paso Natural Gas Company, 376 U.S. 651, 84 S.Ct. 1044, 12 L.Ed.2d 12 (1964), a consideration of the oral arguments, files and records, and the various "motions", "applications" and "petitions", it is

Ordered that the motions, applications and petitions be and they hereby are denied upon the grounds and for the reasons set forth in the memorandum of defendant El Paso Natural Gas Company filed November 25, 1964, which the Court hereby adopts as his Memorandum Opinion.

There are now twenty strangers to this litigation seeking to become parties by "motions" and "applications" to intervene. Their claims to the rights of parties, including the right to appeal from a final divestiture decree, come long after the trial and entry of the judgment, which was reversed by the Supreme

Court upon an opinion requiring "divestiture without delay". Every issue on the merits between plaintiff and El Paso has been finally adjudicated. All that remains is to fashion a divestiture decree which complies with the mandate of the Supreme Court.

Intervention is opposed by both El Paso and the United States.

The score of applicants and movants for intervention consist of the public utilities commissions of seven states,[1] the State of California (as distinguished from its public utilities commission), eleven natural gas distributing companies,[2] and Paradox Production Corporation, whose claim rests upon the astonishing assertion that it is entitled to intervene because it wishes to purchase the assets of which El Paso is to be divested.

■ The positions of these movants and applicants are in hopeless conflict; they reflect disputes among the would-be intervenors *inter se* respecting their conception of what will serve the "convenience and necessity" of the natural gas consumers they have undertaken to represent. The antitrust questions before the Court are paramount to such matters.

The Utah and Wyoming Public Service Commissions, and seven distributing companies,[3] support El Paso's plan for divestiture. They ask to intervene only if the motion of another is granted.

The regulatory commissions of California, Idaho and Nevada, and Mountain Fuel Supply Company and Washington Water Power Company, confine themselves to claims of a right to represent consumers in their states and have taken no position on El Paso's plan. The

Nevada commission would intervene only if the application or motion of another is granted.

Dissatisfaction with various details of El Paso's divestiture plan is alleged by the Oregon and Washington commissions, the State of California (as distinguished from its public utilities commission) and Cascade Natural Gas Company. Of course, Paradox Production opposes El Paso's plan because the plan does not contemplate a sale of assets to Paradox.

Pacific Gas and Electric Company appears to contend simply that this Court has no jurisdiction over the details of the divestiture ordered by the Supreme Court.

## II.

### NO ONE IS ENTITLED TO INTERVENE AS OF RIGHT

In this Court the requirements of Rule 24 govern intervention. The Rule requires that an applicant be permitted to intervene only upon a "timely application" showing that:

(1) a statute of the United States confers an unconditional right to intervene,

(2) the representation of the applicant's "interest" by the existing parties is or may be inadequate *and* the applicant is or may be bound by the judgment, or

(3) the applicant will be adversely affected by disposition of property subject to the control of the Court.

A. *None of the Applications or Motions is "Timely".*

■ Rule 24 requires expressly that an application to intervene be "timely".

---

1. California, Idaho, Nevada, Oregon, Utah, Washington and Wyoming.

2. Cascade Natural Gas Corporation, Intermountain Gas Company, Mountain Fuel Supply Company, Northwest Natural Gas Company, Pacific Gas and Electric Company, Southern California Gas Company, Southern Counties Gas Company of California, Southwest Gas Corporation, Utah

Gas Service Company, Washington Natural Gas Company and Washington Water Power Company.

3. Intermountain Gas Company, Northwest Natural Gas Company, Southern California Gas Company, Southern Counties Gas Company of California, Southwest Gas Corporation, Washington Natural Gas Company and Utah Gas Service Company.

The fact that each of the motions and applications before the Court was filed long after judgment was entered is itself a sufficient basis for denial.

Basle Theatres, Inc. v. Warner Bros. Pictures Distr. Corp., 24 F.R.D. 476 (W.D.Pa.1959), was a movie antitrust case in which would-be intervenors filed their applications after an appeal from the judgment had been dismissed in the course of settlement. The Court held (24 F.R.D. p. 477):

> "Where there is substantial litigation, tardy intervention will usually be denied. Intervention after judgment is unusual and not often granted. See Vol. 4, Moore's Federal Practice, § 24.13. * * *
>
> " * * * as we have pointed out, the case has been concluded; a decree entered; and the parties have reached an amicable settlement and dismissed their appeal. The applicants for intervention here have in effect slept on their rights, and now they want this Court in effect to administer the motion picture industry in the distribution of motion pictures in Western Pennsylvania."

Intervention was denied.

B. *No Movant or Applicant Has Shown the "Interest" Required for Intervention.*

Rule 24 requires that a would-be intervenor demonstrate at the outset an "interest" in the subject of the action. The commission and distributor movants and applicants allege the same general "interests", except for Paradox Production Corporation which has none at all.

■ The state regulatory commissions each allege an "interest" in asserting the conflicting claims of gas consumers in their states regarding the New Company to be created by divestiture. The distributing companies also volunteer to protect the "interests" of their consumer customers and, of course, their own economic well being.

Such matters cannot prevail over *antitrust* requirements in this case. The Federal Power Commission held that the merger of Pacific Northwest into El Paso was supported by regulatory considerations of public convenience and necessity. The Supreme Court did not disagree, but held, instead, in California v. Federal Power Commission, 369 U.S. 482, 82 S.Ct. 901, 8 L.Ed.2d 54 (1961), that such considerations give way to paramount antitrust policies under Section 7 of the Clayton Act. The approving regulatory determination of the Commission was therefore laid aside by the Supreme Court in order that the controlling *antitrust* questions might be determined.

■ Compliance by this Court with the mandate of the Supreme Court for "divestiture without delay" should not be defeated by intrusion of collateral disputes between intervenors over questions irrelevant to the controlling requirements of the antitrust law.

This principle finds expression in an unbroken line of authorities. Commonwealth Edison Co. v. Allis-Chalmers Mfg. Co., 315 F.2d 564 (7 Cir. 1963), cert. den. 375 U.S. 834, 84 S.Ct. 64, 11 L.Ed.2d 64, was an antitrust damage suit brought by Illinois public utilities companies against manufacturers of utility electrical equipment. Plaintiffs alleged that the defendants conspired to fix prices, allocate markets and the like, so that plaintiffs were overcharged for electrical equipment they purchased from defendants. The Attorney General of Illinois sought to intervene "in order to represent and protect the interests of the public consumers * * * who * * * were injured by defendants' price fixing conspiracies" (315 F.2d p. 566). Intervention was denied:

> "We hold that the State of Illinois as agent or parens patriae of the consumers (accepting arguendo that the State of Illinois can properly assume such role) or even the consumers themselves do not have any direct personal or pecuniary interest

in these antitrust actions. Our holding renders moot any discussion of the existence of the subsumed secondary elements. The rationale for our holding follows.

"The interests of plaintiffs and the consumers are different and arise from separate though related operative facts. The legal interest of plaintiffs which they are attempting to vindicate in these actions arises under the federal antitrust statutes. The damages, if any, to which they are entitled are measured by the hurt they may have suffered by reason of the alleged conspiracies claimed to be violative of the antitrust laws. That hurt is measured by the excessive prices they claim were paid for equipment purchased from defendants. The alleged conspiracies spent themselves on these purchasers. The aftereffects of the hurt on the consumers are consequential and too remote for the consumers to gain rights against the conspirators.

"The consumers' rights, if any, to reparation for their consequential hurt arise from higher rates and charges for services provided by plaintiffs. That is the proximate cause of their injury, not the antitrust violation. See Keogh v. C. & N. W. Ry. Co., 260 U.S. 156, 43 S.Ct. 47, 67 L.Ed. 183 (1922). *The consumers' rights do not penetrate through to the antitrust conspiracies.*" (emphasis added)

This is well supported by Supreme Court authorities.

Missouri-Kansas Pipeline Co. v. United States, 312 U.S. 502, 61 S.Ct. 666, 85 S.Ct. 975 (1941), was an action by the government to enjoin activities by defendant utilities alleged to have eliminated Panhandle Eastern Pipeline Company from competing for the Detroit market. A consent decree had been entered. It expressly permitted Panhandle Eastern to become a party to enforce specified rights given it by the decree. Upon reopening to modify the consent decree, Panhandle Eastern was held entitled to intervene under these decree provisions but not to have a sufficient interest to intervene under Rule 24.

In Allen Calculators, Inc., v. National Cash Register Co., 322 U.S. 137, 64 S.Ct. 905, 88 L.Ed. 1188 (1944), National Cash Register Co. had earlier been enjoined from acquiring a competitor without approval of the Court. It petitioned for Court permission to acquire Allen Co. The government opposed and Allen itself sought to intervene. The intervention application was held properly denied because Allen would not be bound by the decision of National Cash Register's petition and had no interest in the distribution or disposition of property in the Court's custody within the meaning of Rule 24. Missouri-Kansas Pipeline Co. v. United States was distinguished as turning upon decree provisions entitling Panhandle Eastern to become a party.

Sutphen Estates v. United States, 342 U.S. 19, 72 S.Ct. 14, 96 L.Ed. 19 (1951), an offshoot of United States v. Paramount Pictures, 334 U.S. 131, 68 S.Ct. 915, 92 L.Ed. 1260 (1948), is in point. After the Supreme Court decided the Paramount case, defendant Warner Brothers was ordered "reorganized" into two companies in a manner similar to divestiture. Sutphen Estates had leased property to a Warner affiliate and Warner had guaranteed the lessee's performance of the lease. The lessor sought to intervene to protect its rights against Warner as guarantor. It was held to have no right to do so because the lessor was not "a privy of Warner" and the "reorganization" decree would not bind the lessor in any legal sense. The Supreme Court recognized, however, that lessor had an interest in property subject to Court disposition within Rule 24(a) (3). It rejected this "interest" as a basis for interference with *antitrust* relief by way of intervention in this language, which disposes of the motions and applications

now before the Court (342 U.S. p. 22, 72 S.Ct. p. 16):

> "We do not think, however, that on this record appellant has shown that it will be 'adversely affected' by the reorganization within the meaning of Rule 24(a) (3). * * *

> "We hold only that appellant has not maintained the burden of showing that under Rule 24(a) (3) it may intervene as of right."

The well-settled rule that paramount antitrust considerations cannot be defeated through intrusion of "interests" resting upon other grounds was sustained in Sam Fox Publishing Co. v. United States, 366 U.S. 683, 81 S.Ct. 1309, 6 L.Ed.2d 604 (1961). The United States sued ASCAP to restrain practices allegedly injurious to competition for the artistic works of ASCAP members. After entry of a consent decree, certain publisher members of ASCAP sought to intervene in modification proceedings. The Court held they had no interest within Rule 24 (p. 689, 81 S.Ct. p. 1313):

> "We regard it as fully settled that a person whose private interests coincide with the public interest in government antitrust litigation is nonetheless not bound by the eventuality of such litigation, and hence may not, as of right, intervene in it."

The Court buttressed this conclusion with a warning that intervention ought not "to subvert":

> " * * * the unquestionably sound policy of not permitting private antitrust plaintiffs to press their claims against alleged violators in the same suit as the Government * * *." (p. 693, 81 S.Ct. p. 1315).

See also the opinions in United States v. E. I. Du Pont De Nemours & Co., reported at 13 F.R.D. 487 (N.D.Ill.1953) and 1962 Trade Cases, para. 70,245 (N.D. Ill.1962), both denying stockholders' petitions to intervene brought at various stages of the case.

These authorities dispose of the contention that the applicants and movants here have an "interest" within Rule 24 entitling them to intervene and the related assertion that they would be "bound" by the final divestiture decree in the legal sense required by the Rule. We turn to the claim that the public interests the would-be intervenors have volunteered to represent are not adequately protected by the Department of Justice.

C. *The Public Interest Is Adequately Represented By The Department of Justice.*

Each movant and applicant claims, in one way or another, that its interests and the interests of the consumers it seeks to represent will not be adequately represented by the Department of Justice as counsel for the United States.

Analysis of this claim requires reiteration, at the outset, of what the controlling interests and issues *are* and what they are not. In its first decision involving this matter, California v. Federal Power Commission, 369 U.S. 482, 82 S.Ct. 901, 8 L.Ed.2d 54 (1961), the Supreme Court held, as we have seen, that *antitrust* requirements take precedence over and govern regulatory determinations by the Federal Power Commission of what the public convenience and necessity requires. The Department of Justice represents the United States here in giving effect to those controlling antitrust considerations delineated by the Supreme Court in its application of Section 7 of the Clayton Act to this case. The complaint of the eighteen state commissions and distributing companies seeking to intervene is not that the attorneys for the United States are inadequate to the antitrust task. The claim *is,* instead, that the United States Attorney and Department of Justice *will* give the precedence to antitrust requirements required by the Supreme Court and in the process neglect the conflicting conceptions of the would-be intervenors as to what the conven-

ience and necessity of their consumers might otherwise dictate.[4]

We note in passing that the moving state commissions could not claim a right to intervene upon assertions of jurisdiction to regulate the activities of the New Company to be organized pursuant to El Paso's plan. The facilities the New Company will operate are interstate in nature, as were the facilities of Pacific Northwest, and the jurisdiction of the Federal Power Commission to regulate them is exclusive [15 U.S.C. § 717(b) ; see Panhandle Eastern Pipeline Co. v. Public Service Commission of Indiana, 332 U.S. 507, 68 S.Ct. 190, 92 L.Ed. 128 (1947), Federal Power Commission v. Transcontinental Gas Line Corp., 365 U.S. 1, 81 S.Ct. 435, 5 L.Ed.2d 377 (1960), and authorities cited]. It is clear, in any event, that the regulatory process must take place in commission proceedings *after divestiture* upon rates and other matters with which this Court is not concerned. To intertwine antitrust and regulatory interests would defeat the orderly accomplishment of both.

The proof of this pudding is in the position assumed here by the Federal Power Commission. It participates *amicus curiae* upon a statement which says the Commission has no wish to become a party. In this the Commission recognizes that it is for this Court to fashion a divestiture decree in conformity with the antitrust requirements of the Supreme Court's mandate and for the Commission, when divestiture has been effected, to concern itself with regulatory matters unrelated to the Court's duties in respect of Section 7. If the twenty applicants and movants here were entitled to intervene upon the grounds they allege, then every consumer of natural gas in the western United States would be similarly entitled upon like grounds, and performance by this Court

of its duties prescribed by the Supreme Court mandate would become practically impossible. See, for example, City of New York City v. New York Telephone, 261 U.S. 312, 43 S.Ct. 372, 67 L.Ed. 673 (1923), and In Re Engelhard & Sons Co., 231 U.S. 646, 34 S.Ct. 258, 58 L.Ed. 416 (1914), denying telephone subscribers' petitions to intervene in actions relating to rates in which state commissions were parties.

The right and duty of the United States Attorney and Department of Justice to represent the United States, and therefore the interests of all citizens, is statutory (28 U.S.C. § 507). The Supreme Court has accordingly held, in United States v. Paramount Pictures, 334 U.S. 131, 177, 68 S.Ct. 915, 939, 92 L.Ed. 1260 (1948):

> "The complaint of the [would-be] intervenors was directed towards the system of competitive bidding. The Department of Justice is the representative of the public in these antitrust suits. So far as the protection of the public interest in free competition is concerned, the interests of those intervenors was adequately represented."

D. *Applicants Have No Interest In El Paso's Property Entitling Them To Intervene.*

None of the would-be intervenors has an interest in the assets to be divested which would authorize intervention under subdivision (3) of Rule 24(a). This statement from Moore accurately summarizes the authorities:

> "What kind of an interest must a petitioner have in property subject to the control of a Court before he can claim an absolute right to intervene? *Obviously it must be an interest known and protected by the law:* A claim of ownership, or a les-

---

4. It is remarkable that one of the attorneys for California who protested the paramount importance of antitrust considerations before the Supreme Court in

California v. Federal Power Commission now reverses his position and seeks to subvert antitrust considerations to other matters.

ser interest sufficient and of the type to be denominated a lien equitable or legal." (4 Moore's Federal Practice, para. 24.09, p. 45).

See also the analysis in Archer v. United States, 268 F.2d 687 (10 Cir. 1959).

The movants and applicants here plainly have no *legal* interest in El Paso's property. Nor do contracts between the distributors and El Paso for purchase and sale of gas vest any such interest in the moving distributing companies. It is not claimed, nor could it be, that these agreements give the distributors a *legal* interest in El Paso's gas supplies in the nature of a lien or otherwise. They have no interest respecting rates charged for gas purchased under the agreements because *rates will not be affected by divestiture;* the New Company will continue the rates and other terms and conditions of service now in effect, and the Federal Power Commission will continue to regulate them.

In any event, Sutphen Estates v. United States, 342 U.S. 19, 72 S.Ct. 14, 96 L.Ed. 19 (1951), disposes of any claimed right to intervene in an antitrust case upon assertions of economic interest in property to be divested. A lessor of property leased to a Warner Brothers subsidiary upon a lease guaranteed by Warner Brothers was denied intervention in an antitrust action in which Warner Brothers had been ordered divided into two companies.

On this point, as on the others discussed above, most of the would-be intervenors have simply repeated the language of Rule 24 in support of a claimed right to intervene, without analysis or citation of other authority (e. g., the "Statement" of California in support of its application, dated November 19, 1964). A few applicants (e. g., Cascade Natural Gas Company in its memorandum served November 18, 1964) grapple with Sutphen Estates and other authorities upon which we rely in an effort to show that they are not inconsistent with intervention here. But there is no authority fairly supporting the motions and applications now before the Court.

Ford Motor Company v. Bisanz Bros., 8 Cir., 249 F.2d 22 (8 Cir. 1957), is heavily relied upon by the would-be intervenors who have undertaken to discuss authorities. It is not in point. The case holds only that Ford Motor Company could intervene in an action brought by property owners to terminate service by the defendant railroad to Ford's plant. Whatever difficulties there may be in reconciling this opinion of the Eighth Circuit with the Supreme Court authorities, it is clear that the Ford case did not involve the antitrust laws or other public interests entrusted to lawyers already in the case, that the issues Ford wished to raise as intervenor were of the same kind as had arisen between the parties, and that Ford's application was not presented to the Court for the first time after judgment.

Certain of the state commissions (e. g., Washington commission memorandum p. 11) rely upon Securities and Exchange Commission v. United States Realty Co., 310 U.S. 434, 60 S.Ct. 1044, 84 L.Ed. 1293 (1940), as declaring a principle which would allow them to intervene as public agencies without the interest required by Rule 24. The decision does not so hold. It decides only that the S.E.C. may intervene in Chapter XI Bankruptcy proceedings under circumstances peculiar to bankruptcy and otherwise different from those involved here. The Supreme Court based the right of the S.E.C. to intervene in Chapter XI proceedings in part upon its statutory right to intervene in proceedings under Chapter X and the General Orders in Bankruptcy; unlike the commission applicants here, the S.E.C. sought to raise the same bankruptcy issues as might have been raised between the parties. Finally, the S.E.C. sought to represent interests otherwise unrepresented in the bankruptcy case. In this case the Federal Power Commission participates as *amicus curiae* to be heard upon regulatory considerations deemed

by it pertinent to the divestiture to be ordered by this Court. The American Realty Co. case has nothing to do with intervention by a state regulatory commission to raise matters upon which a federal regulatory commission is already participating *amicus curiae*.[5]

## III.

### PERMISSIVE INTERVENTION SHOULD BE DENIED

In several of the decisions analyzed above with respect to intervention as a matter of right under Rule 24(a), a companion claim to permissive intervention under Rule 24(b) also was denied.

■ No different conclusion is warranted here. Rule 24(b) authorizes permissive intervention: (1) when a statute confers a conditional right to intervene or (2) when the applicant's claim or defense and the main action have a question of law or fact in common. No statute confers any right, conditional or otherwise, to intervene here. No movant or applicant asserts any claim or defense on the merits at all because the merits have been finally decided. There is no question of fact or law the movants and applicants seek to raise in common with the antitrust matters which are the responsibility of the attorneys for the United States. On the contrary, as we have seen, the purpose of the would-be intervenors is to inject into these proceedings issues of regulatory convenience and necessity over which antitrust considerations are paramount.

Rule 24(b) also directs the Court, in determining whether to allow permissive intervention, to "consider whether the intervention will unduly delay or prejudice the adjudication" of issues between the parties. If the movants and applicants here were permitted to participate

and try out the questions they seek to raise, the divestiture hearing probably would take longer to complete than the matters concluded in this litigation thus far. Intervention would make "divestiture without delay" a practical impossibility.

## IV.

### OTHER MATTERS RELATING TO CALIFORNIA, PACIFIC GAS AND ELECTRIC COMPANY AND PARADOX PRODUCTION CORPORATION

#### A. *California*

A remarkable circumstance which occurred after the hearing on October 19 last raises serious confusion regarding the authority of those who seek to intervene on behalf of the consumers of California. A "Special Attorney for the People of the State of California" filed an application to intervene dated July 20, 1964, and addressed the Court extensively at the October 19 hearing (Tr. 75, et seq.). After that hearing the Public Utilities Commission of California filed a motion to intervene dated November 16, 1964, over the signature of its Chief Counsel. It, too, claims authority to represent California consumers.

There is more, however, than confusion as to who is counsel for California. The statement of its "Special Attorney" and the motion of the Chief Counsel of its Public Utilities Commission are not consistent. The Special Attorney raises a series of questions regarding, and in fact appears to oppose, El Paso's divestiture plan. The California commission, on the other hand, appears to take no position on El Paso's plan, but seeks simply to represent the interests of California consumers upon whatever questions might arise.

---

5. The related claim of the Oregon commission of a right to intervene as parens patriae of Oregon consumers is disposed of contrary to the commission's contentions by Commonwealth Edison Co. v.

Allis-Chalmers Mfg. Co., 315 F.2d 564 (7 Cir. 1963), cert. den. 375 U.S. 334, 84 S.Ct. 64, 11 L.Ed.2d 64, discussed supra p. 6.

## B. *Pacific Gas and Electric Company*

The motion of Pacific Gas and Electric Company to intervene dated November 17, 1964, asserts the astonishing proposition that this Court lacks jurisdiction to prescribe details of the divestiture required by the mandate of the Supreme Court. P.G. and E. contends that this Court should abdicate to the Federal Power Commission on a host of matters which must be resolved to effect divestiture.[6] Although its motion cites in California v. Federal Power Commission, 369 U.S. 482, 82 S.Ct. 901, 8 L.Ed.2d 54 (1962), P.G. and E. appears to overlook the essential holding of the Supreme Court in that opinion, viz., that in this action preservation of the competition required by *the antitrust laws* is the paramount and governing consideration.

 We submit that P.G. and E.'s motion, stripped to its bare essentials, proposes that P.G. and E. be made a party in order that it may contend that the Court lacks power to fashion the decree required by the mandate of the Supreme Court. This is itself a sufficient basis for denial.

## C. *Paradox Production Corporation*

As a would-be purchaser of the assets to be divested, this applicant has no interest in the action, El Paso's property or the divestiture decree. Our research has understandably failed to disclose any reported decision dealing with this type of claim to a right to intervene.

Recognizing that it has no interest within Rule 24 of any kind, Paradox, in its memorandum served on November 20, 1964, takes issue with El Paso's shareholders. This complaint, utterly unsupported by the authority Paradox cites,[7] is nothing more than a transparent effort to establish the curious proposition that the interests of the stockholders of Paradox are paramount to the antitrust requirements on which the mandate of the Supreme Court is based."

6. The Commission took no such position in its statement to the Court as *amicus curiae* on October 19. The Washington commission, which is dissatisfied with El Paso's plan, also takes a different and correct position. In its memorandum served November 23, 1964, the Washington commission asserts that "it is within the jurisdiction of this court, not the Federal Power Commission, by its decree of divestiture to determine what shall be the capital structure, the balance sheet, the investment, the gas supply and other factors" relating to the New Company and essential to divestiture. The Oregon commission, in its memorandum served the same day, agrees.

7. United States v. duPont, 366 U.S. 316, 81 S.Ct. 1243, 6 L.Ed.2d 318 (1960), final decree on remand reported in 1962 Trade Cases, para. 70,245 (N.D.Ill.1962).