**UNITED STATES of America,**
**Plaintiff,**

**v.**

**BLUE CHIP STAMP COMPANY,** Alexander's Markets, Lucky Stores, Inc., Market Basket, Purity Stores, Inc., Ralphs Grocery Company, Safeway Stores, Incorporated, Thriftimart, Inc., Thrifty Drug Stores Co., Inc., and Von's Grocery Co., **Defendants.**

Independent California Service Station Operators, Plaintiffs in the action of Twyman, et al. v. Blue Chip Stamp Company, et al.; Raley's, a corporation; Thrifty Shoppers Scrip Co., Petitioners for Intervention.

No. 63–1552.

United States District Court
C. D. California.
Aug. 18, 1967.

Jack Corinblit, J. J. Brandlin, Los Angeles, Cal., for Raley's, Inc.

David B. Gold, Leon Schiller, San Francisco, Cal., for Thrifty Shoppers Scrip Co.

Howard, Prim, Smith, Rice & Downs, Howard M. Downs, Stuart R. Pollak, A. James Robertson, II, San Francisco, Cal., for Independent California Service Station Operators.

O'Melveny & Myers, William W. Alsup and Allyn O. Kreps, Los Angeles, Cal., for Blue Chip Stamp Co., Von's Grocery Co., Alexander's Markets, Ralphs Grocery Co., Thrifty Drug Stores Co., Inc., Lucky Stores, Inc., and Safeway Stores, Inc.

Donahue, Richards & Gallagher, Joseph A. Woods, Jr., Oakland, Cal., for Lucky Stores, Inc.

Pillsbury, Madison & Sutro, William E. Mussman and David T. Steffen, San Francisco, Cal., for Safeway Stores, Inc.

Thelen, Marrin, Johnson & Bridges, Gordon Johnson and Paul R. Haerle, San Francisco, Cal., for Purity Stores, Inc.

McCutchen, Black, Verleger & Shea, G. Richard Doty, Kenneth Owen, Los Angeles, Cal., for Market Basket.

William J. Currer, Jr., Los Angeles, Cal., for Thriftimart, Inc.

Stanley E. Disney, James M. McGrath, Lawrence W. Somerville, Richard W. Leusebrink, Antitrust Division, Department of Justice, Los Angeles, Cal., for United States of America.

Thomas C. Lynch, Wallace Howland, San Francisco, Cal., for State of California, amici curiae.

Burke, Williams & Sorensen, James T. Bradshaw, Jr., Martin J. Burke, Los Angeles, Cal., for California Grocers Ass'n, amici curiae.

## OPINION DENYING MOTIONS TO INTERVENE AND TO VACATE CONSENT DECREE

FERGUSON, District Judge.

On June 5, 1967, the court approved and signed a consent decree in this antitrust action. Subsequent thereto Petitioners for Intervention filed motions which seek—

(a) to intervene as a matter of right under Rule 24(a) of the Federal Rules of Civil Procedure;

(b) to be permitted to intervene under Rule 24(b); and

(c) to vacate the consent decree of June 5, 1967.

At the conclusion of argument on July 31, 1967, the court orally announced its decision, and by minute order denied the motions. This opinion is written in order to permit a studied examination of the court's views.

### BACKGROUND

On December 26, 1963, the United States filed its complaint alleging that Blue Chip Stamp Company, Thrifty Drug Stores Co., Inc. (the largest pharmacy chain in California) and eight grocery chains (whose 1962 sales constituted 30 percent of all sales of grocery stores in California) had since 1955 engaged in a conspiracy in restraint of trade, and had monopolized the trading stamp business in California, in violation of Sections 1 and 2 of the Sherman Act (15 U.S.C. §§ 1 and 2). The complaint sought an injunction against continuation of the activities charged and asked that the defendant retailers be enjoined in the future from using Blue Chip stamps.

After the case was filed, the Government and the defendants engaged in detailed negotiations to settle the litigation by consent decree. These negotiations extended over two years in time, and the Government afforded an opportunity to all defendants and to all other parties expressing an interest in the case to be heard. As a result of these nego-

tiations, three separate consent decrees were proposed, each of which was lodged with this court. In order that interested parties might have time to study each proposed decree and to make known their views with respect to it, there was annexed to each decree a stipulation providing that all signatory parties consented to entry of the given decree after 30 days unless the Government withdrew its consent during the 30-day period.

On July 22, 1966, the first proposed decree was lodged with the consent of all parties except defendants Market Basket and Thriftimart. The two non-consenting defendants, as well as the State of California, Certified Grocers Association and California Grocers Association (all non-parties), raised objections to the decree before the 30-day period had expired. The Government then withdrew its consent and the decree was withdrawn.

Following further negotiations, a second decree was drafted and lodged with the court on October 28, 1966. The annexed stipulation to the decree was signed by the Government and all defendants except Market Basket and Thriftimart. The Government and the consenting defendants filed briefs in support of the decree. The two non-consenting defendants, and the California Grocers Association, Certified Grocers Association, S & H Stamp Company and the State of California filed briefs in opposition to entry of the decree. On December 13, 14 and 15, 1966, this court held hearings, and all parties favoring or opposing the decree were given opportunity to be heard. At the conclusion of the hearings, the court refused to sign the .proposed decree and outlined certain requirements it believed essential to any decree settling the case.

On April 28, 1967, a third decree was lodged, consented to by all defendants. The court ordered notice should be given to all parties previously appearing in the case, including parties *amici curiae*. Argument was set for June 5, 1967. Such notice was given. Briefs in favor of this third proposed decree were filed by the Government, all defendants and also by the State of California, the California Grocers Association and Certified Grocers Association, who had been active in opposing the earlier decrees. Briefs *amici curiae* in opposition to the proposed decree were filed by the petitioners herein, by S & H Stamp Company and by Gold Bond Stamp Company. After a study of the briefs and consideration of the oral arguments, the court signed and entered the proposed decree on June 5, 1967.

## DESCRIPTION OF PETITIONERS

Independent California Service Station Operators are plaintiffs in the case of *Twyman, et al v. Blue Chip Stamp Co., et al.*, Civil No. 66–1522–F, now pending before this court. The complaint therein alleges substantially the same violations as those alleged in the Government complaint (violation of Sections 1 and 2 of the Sherman Act). Likewise, the Government complaint is incorporated in the petition to intervene. The service station operators suing in *Twyman* and seeking to intervene here claim that by virtue of the Blue Chip trading stamp monopoly, a customer demand has been created for trading stamps, so that service station operators must give trading stamps. It is alleged that by being thus forced to give trading stamps and by being forced to obtain said trading stamps from a monopoly, the service station operators are damaged. Their complaint seeks threefold damages under the provisions of 15 U.S.C. § 15.

Thrifty Shoppers Scrip Co. is a stamp company which competes with Blue Chip. It has filed an action in this court, *Thrifty Shoppers Scrip Co. v. Blue Chip Stamp Co.*, Civil No. 67–596–F, against the same defendants as are here, alleging injury in its efforts to compete in the trading stamp business in California due to the restraints of trade and the monopolization by the defendants. Thrifty seeks threefold damages.

Raley's, Inc., a retail grocery chain, also is the plaintiff in a civil action now

pending before this court. A 2% stockholder of Blue Chip, Raley's is suing on behalf of said company and other stockholders. Raley's, et al. v. Alexander's Markets, et al., Civil No. 64–660–F. Named as defendants are Blue Chip, the other defendants in the Government suit, and certain individual shareholders of Blue Chip Stamp Company. Raley's complaint alleges violation of Sections 1 and 2 of the Sherman Act and prays for money damages, for a decree requiring the defendants to sell their stock in Blue Chip Stamp Company and for an injunction prohibiting the defendant shareholders from participating in future profits of Blue Chip. In 1966 Raley's commenced using Gold Bond stamps. From 1959 to 1966 it had used its own stamps; prior to 1959 it had used Blue Chip.

### RULE 24

The applicable rule is Rule 24, Federal Rules of Civil Procedure:

*Rule 24. Intervention.*

"(a) INTERVENTION OF RIGHT. Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."

"(b) PERMISSIVE INTERVENTION. Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. When a party to an action relies for ground of claim or defense upon any statute or executive order administered by a federal or state governmental officer or agency or upon any regulation, order, requirement, or agreement issued or made pursuant to the statute or executive order, the officer or agency upon timely application may be permitted to intervene in the action. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."

### QUESTIONS PRESENTED

The questions presented are whether petitioners (1) have a right to intervene [Rule 24(a)], or (2) should be permitted to intervene [Rule 24(b)] in an action brought by the Government and subsequently settled, with the consent of the court after a full hearing, and (3) whether, ancillary to this, the petitioners have a right to have the consent decree vacated.

### THE PETITIONS WERE NOT TIMELY

 Rules 24(a) and 24(b) specifically provide for intervention only upon "timely application". The present motions were neither served nor filed until after June 5, 1967, the date the consent decree was entered. Twyman's motion was filed June 19, 1967; Thrifty Shoppers' on July 12, 1967; and Raley's on July 14, 1967. The rule for intervening after entry of a final judgment is set forth in Barron & Holtzoff, Fed.Prac. & Proc. 2 ¶ 594:

"Intervention may be allowed after a final judgment or decree if it is necessary to preserve some right which cannot otherwise be protected, but such intervention will not be permitted unless a strong showing is made."

Petitioners have failed to make any showing at all as to any right which can only be protected by intervention. Furthermore, there is no showing that their applications are "timely".

Each petitioner claims it demonstrated its opposition to the decree by filing an *amicus curiae* brief and by arguing in

opposition to its entry. However, if petitioners had time to make known their opposition to the decree, they had time to file their applications to intervene.

In *United States v. Wilhelm Reich Foundation*, 17 F.R.D. 96 (D. Me. 1954), *aff'd*, 221 F.2d 957, *cert. denied*, 350 U.S. 842, 76 S.Ct. 82, 100 L.Ed. 750, the court stated:

"Although the determination of timeliness involves a consideration of a number of factors and the time element alone is not controlling, a strong showing must be made by the applicants in order to be allowed to intervene after the entry of a final judgment. See 4 Moore's Federal Practice, 2d Ed., Par. 24.13." 17 F.R.D. at 102.

In *Slusarski v. United States Lines Co.*, 28 F.R.D. 388, 390 (E.D. Pa. 1961), the court stated: "Where, as here, all issues have been resolved and the litigation concluded, with entry of judgment, we think the application is clearly too late." For similar rulings see Alleghany Corp. v. Kirby, 344 F.2d 571 (2d Cir. 1965), *appeal dismissed—cert. improvidently granted*, 384 U.S. 28, 86 S.Ct. 1250, 16 L.Ed.2d 335; Kaplan v. Guardian Life Ins. Co. of Amer., 231 F.Supp. 874, 876–77 (W.D. Mo. 1964); Union Nat. Bank v. Superior Steel Corp., 9 F.R.D. 124 (W.D. Pa. 1949).

Rule 24 fails to provide any standard by which timeliness may be tested. Thus, it is necessary to look to all the circumstances in a given case. However, the courts do not look with favor upon one who, fully aware of what has transpired, nonetheless fails to act on his rights and is unreasonably tardy in filing a petition for intervention. Thus, it has been stated:

"[W]e might say we do not see any reason why these interveners could not have sought intervention much earlier. The Court should also consider the state of the cause. That is, as we have pointed out, the case has been concluded; a decree entered; and the parties have reached an amicable settlement and dismissed their appeal. The applicants for intervention here have in effect slept on their rights, and now they want this Court in effect to administer the motion picture industry in the distribution of motion pictures in Western Pennsylvania. We do not feel that this is a function of a district court." Basle Theatres, Inc. v. Warner Bros. Pictures Distributing Corp., 24 F.R.D. 476, 477 (W.D. Pa. 1959).

██ The requirement of timeliness is not without foundation. The interest in expeditious administration of justice does not permit litigation interminably protracted through continuous reopening. A motion to intervene after entry of the decree should therefore be denied in other than the most unusual circumstances. Such circumstances are not present here. Petitioners have for some time been aware of the existence and nature of the negotiations leading to the final decree entered by this court. They have been given every opportunity to be heard. Had they felt their interests were not being given adequate consideration, they should have moved to intervene. They chose not to do so, but rather waited until lengthy and complex negotiations had been completed, all arguments of *amici* in opposition to the three proposed decrees had been heard and a consent judgment entered, before ultimately seeking to intervene.

Petitioners cite *Kozak v. Wells*, 278 F.2d 104 (8th Cir. 1960), as purported authority for the proposition that intervention is proper after entry of a consent judgment. However, *Kozak* is not applicable here. In that case the motion to intervene came *prior* to entry of the decree and before the issues had been drawn. The opinion did note, however, that "There are even occasions where intervention is proper after judgment." But such cases have typically involved a refusal or unwillingness by the losing party to diligently prosecute the lawsuit, this fact not becoming apparent until after the court's decision. *E. g.*, Hurd v. Illinois Bell Telephone Co., 234 F.2d

942, 944 (7th Cir. 1956) (intervention granted at appellate level where in a spurious class action it appeared that certain members of the class doubted the faithfulness of the named plaintiff in prosecuting the appeal on behalf of the class); Pellegrino v. Nesbit, 203 F.2d 463 (9th Cir. 1953) (intervention granted for purposes of prosecuting appeal by a stockholder who learned after judgment had been entered against the corporation that the corporation had decided not to appeal, despite the fact that the corporation's suit against its officers to recover allegedly improper profits had been instigated at the request of this stockholder); Wolpe v. Poretsky, 79 U.S. App.D.C. 141, 144 F.2d 505 (1944), *cert. denied,* 323 U.S. 777, 65 S.Ct. 190, 89 L.Ed. 621 (intervention granted for purposes of prosecuting appeal because affected property owners did not learn until after judgment that the zoning commission did not intend to appeal an adverse judgment). Under circumstances such as these, where the inadequate representation of the petitioner's interest comes to light only after entry of the decree, the courts have been willing, with good reason, to recognize an exception to the general rule forbidding intervention after entry of the decree. This exception has been narrowly defined: "Intervention may be allowed after a final decree where it is necessary to preserve some right which cannot otherwise be protected." Wolpe v. Poretsky, supra, 144 F.2d at 508.

Referring again to *Kozak, supra,* the motion to intervene therein, as noted above, was filed before entry of final judgment. Thus, *Kozak* is not authority excusing petitioners here from the necessity of making a "strong showing" as to why they did not proceed more diligently. The delay in serving and filing the motions cannot be overlooked when considered in light of the injury sure to result to the public should implementation of the decree be postponed.

Petitioners contend they meet the requirement of timeliness since the *El Paso* case [*Cascade Natural Gas Corp. v. El Paso Natural Gas Co.,* 386 U.S. 129, 87 S.Ct. 932, 17 L.Ed.2d 814 (1967)] holds that even after entry of the consent judgment, intervention may be permitted. Whether or not this is in fact the holding in *El Paso,* it is clear that that case does not rewrite Rule 24(a) and (b) to eliminate the requirement of timeliness. After the Supreme Court ordered divestiture, *United States v. El Paso Natural Gas Co.,* 376 U.S. 651, 84 S.Ct. 1044, 12 L.Ed.2d 12 (1964), the district court held hearings on the form of relief. Twenty parties, including the State of California and Cascade Natural Gas Corp., filed motions to intervene. These motions were filed and denied *before* the district court entered its consent decree. Thus, in the opinion whereby intervention was denied, the district court stated, "All that remains is to fashion a divestiture decree which complies with the mandate of the Supreme Court." United States v. El Paso Natural Gas Co., 37 F.R.D. 330, 332 (D.Utah 1965). Of the 20 prospective intervenors, California, and Cascade Natural Gas Corp., appealed to the Supreme Court, along with Southern California Edison Co., which had petitioned to intervene at a later date. The Supreme Court reversed, permitting intervention. The Court's opinion, per Mr. Justice Douglas, does not even discuss timeliness.

As noted above, California, and Cascade Natural Gas Corp. both sought intervention well in advance of entry of the consent decree. It is not clear when the petition of Southern California Edison Co. was filed. However, on these facts, and in view of the fact that the Supreme Court did not discuss timeliness or the dates the petitions were filed, it is clear that *El Paso* cannot be taken as authority for the proposition that intervention may be permitted after entry of a consent decree.

In *El Paso,* the Supreme Court observed that it had a right to protect and to insure obedience to its own previous mandate. Similarly, this court likewise has broad powers to protect and interpret decrees which it has approved and

issued. Obviously, a ruling by a court that intervention is proper to insure compliance with its earlier mandate is no authority for asserting that a court which has issued a mandate should permit intervention for the purpose of attacking the mandate. In this respect, *El Paso* is actually authority for the denial of the instant motions to intervene, because the present court has power to interpret and enforce the mandate which it has issued.

This interpretation of *El Paso, supra,* has been sustained in the most recent session of the Supreme Court. The Government had prevailed in an action brought to force Alcoa to divest itself of Cupples. (United States v. Aluminum Co. of America, 247 F.Supp. 308 (E.D. Mo. 1962), *aff'd per curiam,* 382 U.S. 12, 86 S.Ct. 24, 15 L.Ed.2d 1.) During the pendency of the action and subsequent negotiations for divorcement, Alcoa and Cupples bid on a contract to supply aluminum curtain walls for the proposed New York Port Authority building, under an agreement that if Alcoa were forced to divest itself of Cupples, it would relinquish the contract to Cupples. Lupton Manufacturing Co. also bid to supply aluminum curtain walls for the building. When the order of divorcement became final, Lupton moved to interevene under Rule 24(a) and (b). Lupton did not contend that it had a right to bid free from competition, but rather asserted that if Cupples were permitted to retain the contract it would retain part of the profit of an illegal merger and thereby frustrate the purposes of the Government's case, namely, to restore free and open competition in the aluminum curtain wall industry. The district court denied Lupton's motion to intervene and a direct appeal was taken to the Supreme Court. United States v. Aluminum Co. of America and Cupples Prods. Corp., 41 F.R.D. 342 (E.D. Mo. 1967), *appeal dismissed,* Lupton Mfg. Co. v. United States, 388 U.S. 457, 87 S.Ct. 2112, 18 L.Ed.2d 1318.

### PETITIONERS HAVE NO RIGHT TO INTERVENE UNDER RULE 24(a)

Rule 24(a) governs intervention as of right. In addition to the requirement of "timely application", 24(a) further requires that a prospective intervenor claim—

> "an interest relating to the property or transaction which is the subject of the action * * * [when] he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest * * *."

Petitioners have not demonstrated the existence of any "interest relating to the property or transaction" which is the subject of the Government's suit which might support their applications to intervene.

■ Each petitioner has filed an action, pending in this court, charging the defendants with substantially the same antitrust violations as those charged in the Government's case. They seek damages for the injuries suffered as a result of these violations. None of their "interests" are in any way "impaired or impeded" by settlement of the Government's case. Nor is their ability to prosecute their respective cases impaired or impeded by the Government's case. The speculation that petitioners may be benefited in the trial of their respective cases if the Government is forced to litigate its case certainly does not give them an "interest" in the Government's case sufficient to support the motions to intervene.

■ If the petitioners are appearing merely as members of the public, in the public interest, then it is incumbent upon them to establish that the Government has not acted properly in the public interest. This they have not done. Congress has vested in the Department of Justice the duty of instituting proceedings in equity to prevent and restrain antitrust violations. (15 U.S.C. § 4.) Acting on behalf of the public interest in the present matter, the Government first investigated, and then filed its

complaint seeking to restrain the violations and to dissipate the monopoly revealed by its investigation. Substantial effort was expended both in preparing the case for trial and in seeking to negotiate the consent decree, here challenged, to attain the two principles for which the case was originally filed. The decree enjoins those trade restraints alleged to be illegal in the complaint, and provides for drastically reducing the power of the defendant retailers over Blue Chip Stamp Company; defendant retailers are enjoined from acting in concert in the trading stamp industry in the future. The monopoly power of Blue Chip is decreased, and competition is opened.

### PETITIONERS SHOULD NOT BE PERMITTED TO INTERVENE UNDER RULE 24(b)

■ Generally speaking, the right to intervene to defeat entry of a consent decree in any government antitrust action has been consistently denied.

In *Sutphen Estates, Inc. v. United States*, 342 U.S. 19, 72 S.Ct. 14, 96 L.Ed. 19 (1951), the facts were that after the decision in *United States v. Paramount Pictures, Inc. et al.*, 334 U.S. 131, 68 S.Ct. 915, 92 L.Ed. 1260 (1948), Warner Brothers Pictures Corporation was ordered reorganized in a manner similar to divestiture. Sutphen Estates had leased property to a Warner affiliate and Warner had guaranteed the lessee's performance of the lease. Intervention was sought by the lessor to protect its rights against Warner as guarantor. Intervention was denied because the lessor was not a privy of Warner and the "reorganization" decree would not bind the lessor in any legal sense. The Court stated that "the claim of injury to appellant is too speculative and too contingent on unknown factors to conclude that there was an abuse of discretion in denying leave to intervene". 342 U.S. at 23, 72 S.Ct. at 17, 96 L.Ed. at 24.

In *Sam Fox Publishing Co., et al. v. United States*, 366 U.S. 683, 81 S.Ct. 1309, 6 L.Ed.2d 604 (1961), the district court denied certain music publishers in-

tervention in proceedings for the modification of a prior consent decree in a government antitrust suit. On appeal, the Supreme Court, per Justice Harlan, stated:

"We regard it as fully settled that a person whose private interests coincide with the public interest in government antitrust litigation is nonetheless not bound by the eventuality of such litigation, and hence may not, as of right, intervene in it. In United States v. Borden Co., 347 U.S. 514 [74 S.Ct. 703, 98 L.Ed. 903], it was ruled that it was an abuse of discretion for the District Court to refuse the Government an injunction against certain acts held violative of the antitrust laws, even though the same acts had already been enjoined in a private suit. It was there stated in clearest terms that 'private and public actions were designed to be cumulative, not mutually exclusive' (id., at 518 [74 S.Ct. at page 706]) * * *." 366 U.S. at 689, 81 S.Ct. at 1313.

See also United States v. Loew's, Inc., et al., 20 F.R.D. 423 (S.D.N.Y. 1957).

In *United States of America v. Radio Corp. of America*, 186 F.Supp. 776 (E.D. Pa. 1960), *appeal dismissed*, 364 U.S. 518, 81 S.Ct. 293, 5 L.Ed.2d 264, a competitior of the defendant attempted to intervene after a consent decree had been entered, for the purpose of objecting to proposed acquisitions to which the Government did not object. The court denied intervention, as under the consent decree it had retained jurisdiction only to allow any of the parties to the final judgment—no one else—to apply to the court for further orders or directions. However, the court also stated:

"The Government opposes the motion for intervention and has informed the Court that it has carefully investigated and reviewed all the facts and reached the conclusion that the proposed Boston and San Francisco acquisitions do not violate the decree. In this state of facts, even if I had discretion to allow the intervention, I would not do so. The Government is

concerned with the public interest and is satisfied that the conduct which Westinghouse complains of is not against that interest. It would not lead to an orderly administration of justice to allow intervention in this type of antitrust litigation over the objection of the authorized agency of the United States in charge of enforcing a decree which it has obtained. The movant, if it is aggrieved, must be left to such private remedy as Congress may have provided for it." 186 F.Supp. at 776–77.

This language is particularly significant for the case at bar, where the Government opposes intervention and where the proposed intervenors have already commenced pursuit of private remedies.

### PETITIONERS' MOTIONS ARE WITHOUT MERIT

■ There is no merit to the claims petitioners seek to advance; intervention should thus be denied. In *Marx v. Maddrey*, 106 F.Supp. 535 (E.D. N.C. 1952), petitioner moved to intervene and to set aside an order previously entered. The court denied intervention on the ground that the arguments raised in opposition to the order were without merit.

Petitioners here do nothing more than reiterate arguments previously presented; they fail to raise any additional arguments not already heard at length and denied by this court. To permit intervention and vacation of the decree so that these very same arguments can be heard again would impose an unwarranted burden on the parties and the court.

In support of their contention that their claims should be heard, petitioners cite *United States v. Grinnell*, 384 U.S. 563, 86 S.Ct. 1698, 16 L.Ed.2d 788 (1966), for the proposition that complete destruction of the monopoly power is the standard of relief in monopolization cases. However, the reliance on *Grinnell* is misplaced. Unlike the case at bar, *Grinnell* was litigated to judgment; there was no consent decree. The authorities do not require complete divesti-

ture where a consent decree, rather than a litigated judgment, is entered. The decree herein is designed to limit the powers of Blue Chip and to open up and increase competition in the stamp industry in California, while at the same time preserving the legitimate interests of the users of Blue Chip stamps. This is consistent with the principles embodied in the antitrust laws.

The consent judgment is indispensable to antitrust enforcement. The Government notes that seventy percent of their antitrust judgments are consent decrees. Such decrees result from negotiation and thus typically may provide something less than the full relief prayed for (and often something more than that which the Government could obtain after trial). Litigation that might proceed for many years is avoided by utilization of this procedure. Its legality is beyond question. In *Sam Fox Publishing Co., supra,* the Supreme Court observed that:

"Apart from anything else, strong policy would strongly lead us to decline appellants' invitation to assess the wisdom of the Government's judgment in negotiating and accepting the 1960 consent decree, at least in the absence of any claim of bad faith or malfeasance on the part of the Government in so acting." 366 U.S. at 689, 81 S.Ct. at 1312, 6 L.Ed. at 609.

As petitioners have not furnished the court with anything beyond that which has already been carefully considered and rejected upon ordering entry of the consent decree, there is nothing to be gained and much to be lost by vacating the decree.

Petitioners, when asked by the court to present in substance a decree which would better serve the public were unable to do so. Their arguments are general and without economic substance. This court has determined that it is essential that there be a viable non-franchised stamp company which can compete with the strong franchised ones, in order to permit small retail businesses in California to compete with large chain establishments. At the present time there is

only one non-franchised stamp company in California, Blue Chip. The decree, among other matters, provides that one-half of Blue Chip's Southern California business must be sold to a purchaser who will operate on a non-franchised basis. This is the most practical way to increase competition in the retail trading stamp business that has been advanced in 3½ years, and petitioners' arguments against the decree are so shallow as to be devoid of merit.