UNITED STATES of America,
Plaintiff,

v.

AUTOMOBILE MANUFACTURERS AS-
SOCIATION, Inc.; General Motors Cor-
poration; Ford Motor Company; Chrys-
ler Corporation; and American Motors
Corporation, Defendants.

No. 69–75.

United States District Court
C. D. California.

Nov. 7, 1969.

Judgment Affirmed March 16, 1970.

See 90 S.Ct. 1105.

**618**

Bernard M. Hollander, Raymond W. Philipps, Allen E. McAllester, Dept. of Justice, Antitrust Division, Los Angeles, Cal., for plaintiff.

Gibson, Dunn & Crutcher, Julian O. Von Kalinowski, Paul G. Bower, Los Angeles, Cal., Wilmer, Cutler & Pickering, Lloyd N. Cutler, Washington, D. C., for Automobile Manufacturers Ass'n, Inc.

Lawler, Felix & Hall, Marcus W. Mattson, Los Angeles, Cal., for General Motors Corp.

Overton, Lyman & Prince, Carl J. Schuck, Los Angeles, Cal., for Ford Motor Co.

McCutchen, Black, Verleger & Shea, Philip K. Verleger, Los Angeles, Cal., for Chrysler Corp.

O'Melveny & Myers, Allyn O. Kreps, Los Angeles, Cal., for American Motors Corp.

## MEMORANDUM OPINION

CURTIS, District Judge.

This is an action brought by the United States of America charging that the defendants, Automobile Manufacturers Association, Inc.,; General Motors Corporation; Ford Motor Company; Chrysler Corporation; and American Motors Corporation have conspired with other motor vehicle manufacturers, in violation of § 1 of the Sherman Act (15 U.S.C. § 1), to eliminate competition in the research, development, manufacture and installation of motor vehicle air pollution control equipment, and in the purchase from others of patents and patent rights, covering such equipment. By way of relief, the plaintiff is seeking an order enjoining these defendants from continuing the alleged unlawful conduct.

After eight months of negotiation, the parties have agreed to settle this case upon terms and conditions embodied in the proposed consent decree now before this court for approval.

On September 11, 1969, the proposed decree was made public and all interested parties, including the State of California, County of Los Angeles, City of Los Angeles, and the Air Pollution Control District of the County of Los Angeles, were invited to express their views as to whether or not the consent decree should be approved. The United States reserved the right to withdraw from the stipulated judgment, however, at any time within thirty days after its submission in the event any objections brought to its attention might seem meritorious.

On October 28, 1969, after the thirty day period had expired, this court held an open hearing at which time all persons wishing to appear as amici curiae were permitted to voice their objections. Appearances have been made on behalf of many states, counties, cities, air pollution control districts, congressional groups, associations and interested individuals.

Petitions to intervene, as parties plaintiff, were filed by the County of Los An-

geles; County of Santa Barbara; the Bay Area Air Pollution Control District; Air Pollution Control District of the County of Los Angeles; the State of New York; the State of Connecticut; the State of Maryland; the State of New Jersey; City of New York; American Civil Liberties Union; two aldermen from the City of Chicago; M. B. Grossman and S. J. Tamkin, plaintiffs in a class action now pending in this court; and William J. A. Sturtz. With the exception of petitioner Sturtz, all prospective intervenors sought intervention in order to assert treble damage claims.[1]

▇ It has not been urged seriously, or if so, not convincingly, that these petitioners may intervene here as a matter of right, for it is well settled that treble damage claimants do not have an "interest" cognizable under Rule 24(a) F.R.Civ.P. in Government anti-trust actions seeking injunctive relief. United States v. Blue Chip Stamp Company, 272 F.Supp. 432 (C.D.Cal.1967), aff'd sub nom. Thrifty Shoppers Scrip Company v. United States, 389 U.S. 580, 88 S.Ct. 693, 19 L.Ed.2d 781 (1968); Commonwealth Edison Company v. Allis Chalmers Manufacturing Company, 207 F. Supp. 252 (N.D.Ill.1962) aff'd 315 F.2d 564 (7th Cir. 1963); United States v. Harper & Row Publishers, Inc., unreported opinion (N.D.Ill., E.D., Nov. 27, 1967), aff'd sub nom., City of New York v. United States, 390 U.S. 715, 88 S.Ct. 1410, 20 L.Ed.2d 251 (1968);[2] United States v. Western Electric Co., 1968 CCH Trade Cases ¶ 72,415 (D.N.J., 1968), aff'd sub nom. Clark Walter and Sons, Inc. v. United States, 392 U.S. 659, 88 S.Ct. 2286, 20 L.Ed.2d 1348 (1968); United States v. Minnesota Mining & Manufacturing Company, unreported opinion (N.D.Ill.E.D. Sept. 2, 1969); United States v. Aluminum Company of America, 41 F.R.D. 342 (D.C.), aff'd per curiam sub nom. Lupton Mfg. Co. v. United States, 388 U.S. 457, 87 S.Ct. 2112, 18 L.Ed.2d 1318 (1967).[3]

It also seems clear that the intervenors are not entitled to permissive intervention. Rule 24(b) F.R.Civ.P. requires the court, in considering whether to allow permissive intervention, to consider whether the intervention will "unduly delay or prejudice the adjudication of the rights of the original parties."[4]

▇▇ The main goal of the intervenors here is to block the proposed decree in the hopes of compelling the parties to litigate this case to judgment. A favorable judgment could then be used as a basis for their own treble damage

---

1. Petitioner Sturtz sought intervention to compel the defendants to buy his smog device, alleging their previous failure to do so constituted an anti-trust violation.

2. Here the Supreme Court affirmed a denial of intervention in a consent decree proceeding where the states and municipalities were seeking virtually the same relief as is being sought here, including an "asphalt clause", access to grand jury records and a summary of evidence.

3. But see Cascade Natural Gas Corp. v. El Paso Natural Gas, 386 U.S. 129, 87 S.Ct. 932, 17 L.Ed.2d 814 (1967). In this case, upon which intervenors heavily rely, the Supreme Court upheld intervention as a matter of right. But this was a case of divestiture in which the decree had a direct effect upon the intervenors. In any event, in the light of subsequent cases it now appears that that ruling is sui generis and must be limited to the facts of that case. United States v. Western Electric Co., supra; Hobson v. Hansen, 44 F.R.D. 18 (D.D.C.1968); 81 Harvard Law Review 356 at 406 (1967); United States v. Aluminum Company of America, supra; Lupton Mfg. Co. v. United States, supra; United States v. Harper & Row Publishers, Inc., supra; City of New York v. United States, supra.

4. Rule 24. Federal Rules of Civil Procedure.

(b) Permissive Intervention. Upon timely application any one may be permitted to intervene in an action: (1) * * * or (2) when an applicant's claim or defense and the main action have a question of law or fact in common * * *. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

actions. In the alternative, they are seeking the inclusion of an admission of liability, commonly called an "asphalt clause",[5] which would produce the same result. However, the defendants have made it clear that they would not consent to such a clause and if it were to be insisted upon, no settlement of the case would be possible.

To allow permissive intervention in this case would certainly delay and prejudice the adjudication of the original parties. Courts, generally, have consistently denied intervention under Rule 24 F.R.Civ.P. in Government anti-trust cases where the purpose is to defeat the entry of a consent decree. United States v. Blue Chip Stamp Company, supra.

All petitions for intervention should, therefore, be denied.

Prior to the institution of this action, the Government impanelled a grand jury to investigate charges that these defendants were engaging in anti-trust activities. After eighteen months, the grand jury was dismissed, without an indictment having been returned. However, during its investigation, a tremendous amount of evidentiary material was gathered together and reviewed and the testimony of many witnesses was obtained. It has been contended by many appearing here as amici curiae that the proposed decree should contain some provision releasing this material, as well as the transcript of the grand jury proceedings, from the cloak of secrecy traditionally surrounding such proceedings, in order that it might become available to treble damage claimants. At the hearing, a proposed order was presented to the court, to which all parties have agreed and which this court has signed,

requiring that all evidence obtained by the grand jury, as well as its own transcript, be impounded in the hands of the Justice Department, where it may be obtained by treble damage claimants, or others, by subpoena or other appropriate means, where good cause therefor can be shown. This appears to satisfy those making this contention.

Let us now turn to a consideration of the proposed consent decree.

Section 5(a) of the Clayton Act, after providing that a final judgment or decree in an anti-trust action brought by the Government may be used with prima facie effect in treble damage actions, expressly excepts from these provisions consent decrees entered in such actions. In so doing, it implicitly recognizes consent decrees as a means of terminating civil anti-trust actions brought by the Government, and their use has become a most effective technique in anti-trust enforcement. It is reported that between 70 and 75 per cent of all such Government cases are settled in this manner, which allows the Government to obtain a large measure of injunctive relief without tremendous consumption of the limited manpower and financial resources available to the Anti-trust Division.

■ The decision to settle an anti-trust case in this fashion, like the decision to commence it in the first place, is an administrative decision and is a part of the implementation of the general policy of the Executive branch of government. As such, it is not subject to review by this court.

■ This court does have the power to disapprove the proposed settlement, but its use requires the exercise of dis-

5. An "asphalt clause" gets its name from a group of anti-trust cases against defendants engaged in the asphalt business, wherein a consent decree containing an admission of liability was approved. United States v. Allied Chem. Corp., 1961 Trade Cas. ¶ 69,923, at 77,641 (D.Mass. 1960) ; United States v. Bituminous Concrete Ass'n., Inc., 1960 Trade Cas. ¶ 69,878 at 77,487 (D.Mass.) ; United States v. Lake Asphalt & Petroleum Co., 1960 Trade Cas. ¶ 69,835, at 77,272 (D. Mass.). So far as the court is aware, such a clause had never been used before and has never been used since. Furthermore, its value is doubtful, for insistence upon it would, for all practical purposes, eliminate the possibility of settling anti-trust cases.

cretion, based upon legal, as distinguished from administrative, considerations. For instance, the court should withhold its approval if the decree be unenforceable or if it should provide for relief not consistent with the prayer of the complaint. The court may properly consider whether or not the rights of persons not parties to the action are jeopardized and whether the consent decree, on the whole, is against the public interest.

The proposed decree appears to be enforceable, and no contention to the contrary has been made. Furthermore, the relief which the decree provides is consistent with the prayer of the complaint.

It has been urged that the decree adversely affects the rights of treble damage claimants in the prosecution of their own claims. But, while it is true that the decree does not afford prima facie proof of liability, the rights of the claimants to prosecute their own claims is not otherwise affected. We know of no authority, and none has been brought to our attention, which would require the Government to prosecute this case to judgment solely for the purpose of aiding treble damage claimants. The Government is the designated representative of the public, and sound policy requires that it be free to conduct and control its litigation in the public interest. This objection to the decree is not valid.

It is strongly urged by many that the decree should be rejected as not being in the public interest. But no good reason appears to this court for finding this to be so. In the first place, it provides the Government with substantially all the relief that it could have obtained if it had tried the case and won. It avoids the tremendous expense of time and money which would be required of the Anti-trust Division in the event of a trial. The decree brings immediate results, whereas if this case were to be tried, any benefit of a final decree would be delayed many years. It brings an assured result. Those objecting have all assumed that the Govern-

ment would win the action if it were brought to trial. But the Government's case is based upon a novel and unadjudicated theory. Knowledgeable people disagree as to the final result. If the Government should try this case and lose, the benefits of the decree would be lost. For these reasons, it appears to the court that the proposed decree is in the public interest.

For the foregoing reasons, all petitions to intervene, as parties, are hereby denied and the proposed consent decree is hereby approved.