Dorothy **BOYD**, individually and on behalf of all others similarly situated, Plaintiff,

v.

**UNITED STATES** of America et al., Defendants.

No. 71 Civ. 1433.

United States District Court, E. D. New York.

June 7, 1972.

---

William L. Reese, Jr., Ruth Balen, of counsel, Bedford-Stuyvesant Community Legal Services, Brooklyn, N. Y., Marttie L. Thompson, Oscar G. Chase, Cornelia McDougald, David Rudenstine, of counsel, Community Action for Legal Services, Inc., New York City, for plaintiff.

Robert A. Morse, U. S. Atty., E.D. N. Y., Brooklyn, N. Y., Henry A. Brachtl, Asst. U. S. Atty., of counsel, for defendants United States, United States Dept. of Justice and John Mitchell, Atty. Gen.

Goldstein, Shames, Hyde, New York City, for defendants Lefrak Organization and Life Realty, Inc.

## MEMORANDUM AND ORDER

WEINSTEIN, District Judge.

Plaintiff, a black mother of five children, is a recipient of public assistance. Claiming discrimination prevents her rental of an apartment from defendants Lefrak Organization and Life Realty, Inc. (Lefrak), she seeks relief on behalf of a class of welfare recipients in the metropolitan area against Lefrak, the United States, the Department of Justice and the Attorney General. Allegedly there has been a failure to enforce the Fair Housing Act (42 U.S.C. § 3601 et seq.) and a violation of the Fifth, Thirteenth and Fourteenth Amendments by discrimination against welfare recipients.

The three federal defendants have moved to dismiss the complaint as to them. As demonstrated below, this motion must be granted. While the Attorney General's discretion in enforcing the Fair Housing Act is limited by the requirements of the Constitution and of the Act itself, he has neither transgressed these limits nor foreclosed plaintiff's separate claim for relief against Lefrak.

## I.  FACTS AND PROCEEDINGS

Plaintiff attempted to rent an apartment from Lefrak in July, 1971. She was denied a rental application for the stated reason that she is a recipient of public assistance. She then filed a complaint with the United States Department of Justice alleging that the exclusion of public assistance recipients from Lefrak housing constituted unlawful discrimination under the consent order of this court of January 28, 1971 in United States v. Life Realty, Inc., 70–C–964 and under the Fair Housing Act. *See* 42 U. S.C. § 3601 et seq.

The consent order in United States v. Life Realty, Inc., 70–C–964, enjoined Lefrak from discriminating on the basis of race in showing or renting apartments; it provided objective tests for the consideration of rental applications. Among the criteria is a requirement that an applicant's net income per week equal at least 90% of the monthly rental of the apartment applied for ("the 90% Rule"). *See* paragraph V(c) (4), Consent Order, January 28, 1971, United States v. Life Realty, Inc., 70–C–964.

Mrs. Boyd moved to intervene in United States v. Life Realty, Inc., 70–C–964, contending that the original 90% rule operated in practice as a blanket exclusion of welfare recipients because of the low level of welfare payments, and hence constituted unlawful discrimination. Her motion to intervene was denied but was treated as a complaint in a separate case —the one now before us. *See* Memorandum and Order, United States v. Life Realty, Inc., 70–C–964, November 4, 1971.

The Department of Justice agreed that a blanket refusal to consider applications of welfare recipients is unlawful. After discussions between the Department of Justice and Lefrak, the consent order was amended in December, 1971 to include a provision requiring rental to those who do not meet the 90% rule but whose "payment of rent shall be guaranteed by a legally enforceable contract by a duly authorized government agency." It was contemplated that a program of such guarantees for welfare recipients would shortly be funded, but the court is now advised that it has not been.

An amended complaint in the instant case charges that, even as amended, the 90% rule operates to exclude welfare recipients from Lefrak housing although they can afford to pay the required rents out of their public assistance benefits. Allegedly, this discrimination against those with the status of welfare recipient violates the Equal Protection Clause of the Fourteenth Amendment. Moreover, it is argued, because a significantly higher proportion of black as compared to other residents of New York City are recipients of public assistance, the amended 90% rule has an illegal racial effect.

## II. CLAIMS AGAINST THE ATTORNEY GENERAL

Relief against the Attorney General is sought on both constitutional and statutory grounds. It is contended that by entering into the original and amended consent agreements with Lefrak the Attorney General participated in and approved discriminatory practices, thereby violating the Fifth and Thirteenth Amend-

ments. Also relied upon is language of section 3613 of title 42 of the United States Code, empowering the Attorney General to request such relief against specified classes of persons "as he deems necessary to insure the full enjoyment of the rights granted by this subchapter." When read together with the provision of section 3608(c) that "All executive departments and agencies shall administer their programs and activities relating to housing and urban development in a manner affirmatively to" eliminate discrimination in rental of certain housing because of race, color, religion, or national origin, there is said to be revealed a Congressional intent to limit the Attorney General's discretion in the enforcement of the Fair Housing Act. Thus, the argument goes, the Attorney General is prohibited from terminating litigation in such a way that would inadequately protect rights of third parties; the amended consent order in United States v. Life Realty, Inc., 70–C–964, constitutes such an impermissible impairment of plaintiff's rights and operates as a "but for" cause of discrimination against her; and she is entitled to declaratory, injunctive and other relief against the government and its named agencies.

■■■ The Attorney General's discretion in the conduct of litigation must be exercised within the framework of applicable constitutional and statutory standards. A prosecutor may not use his discretion in initiating or conducting proceedings—whether criminal or civil —to derogate the statutory or constitutional rights of defendants or others. *See, e. g.,* Brady v. Maryland, 373 U.S. 83, 87–88, 83 S.Ct. 1194, 1196–1197, 10 L.Ed.2d 215 (1963); Dombrowski v. Pfister, 380 U.S. 479, 484, 85 S.Ct. 1116, 1120, 14 L.Ed.2d 22 (1965); United States v. Automobile Manufacturers Ass'n, 307 F.Supp. 617, 620–621 (C.D. Cal.1969), aff'd per curiam sub nom. City of New York v. United States, 397 U.S. 248, 90 S.Ct. 1105, 25 L.Ed.2d 280 (1970). *Cf.* United States by Mitchell v. Frazer, 317 F.Supp. 1079, 1084 (M.D.

Ala.1970); Davis, Discretionary Justice (1969), esp. Chapter VII. In terminating litigation through a consent order, the Attorney General's proposed settlement is subject to the general supervision of the court to insure that it is consistent with relevant statutes and the public interest. *See, e. g.*, United States v. Automobile Manufacturers Ass'n, 307 F.Supp. 617, 620–621 (C.D.Cal.1969), aff'd per curiam sub nom. City of New York v. United States, 397 U.S. 248, 90 S.Ct. 1105, 25 L.Ed.2d 280 (1970). It is hardly necessary to add that the doctrine of prosecutorial discretion has never insulated conduct from review on charges of bad faith, fraud, or illegality. *See, e. g.,* Fed.R.Civ.P. 60(b) (3).

The valid premise of plaintiff's argument does not, however, support the relief requested in this case. There is no allegation of bad faith on the part of the Attorney General or of collusion with Lefrak. The amended consent order in United States v. Life Realty, Inc., 70–C–964, was approved by this court after a hearing in public at which comment by any interested person was possible and, in fact, plaintiff's objection on the grounds of inadequacy of the decree was brought to the court's attention.

Were plaintiff, having been denied intervention, foreclosed from requesting additional relief by the existence of the consent order, it might well be appropriate to hear a collateral attack on the order through a proceeding in which the Attorney General was joined as a defendant. But plaintiff in this case is not so inhibited.

The Fair Housing Act explicitly provides for private enforcement. 42 U.S.C. § 3612. United States v. Life Realty, Inc., 70–C–964, does not operate as *res judicata,* collateral estoppel, or any other bar to plaintiff's suit for relief. As the court noted in its discussions with the parties before signing the amended decree, it set minimum protections against discrimination without precluding individuals from seeking additional remedies required by their special circumstances. *See* United States v. Blue Chip Stamp Co., 272 F.Supp. 432, 438 (C.D.Cal.1967), aff'd per curiam sub nom. Thrifty Shoppers Scrip Co. v. United States, 389 U.S. 580, 88 S.Ct. 693, 19 L.Ed.2d 781 (1968) (denying motion to intervene in an antitrust suit on the grounds that the proposed intervenors' "ability to prosecute their respective cases [is not] impaired or impeded by the Government's case.").

Plaintiff's requested relief against the Attorney General (as well as the United States and Department of Justice) adds nothing, in the circumstances of this case, to this court's power to provide remedies for housing discrimination against the private defendants who control the housing sought by plaintiff's class. On the contrary, joinder of the federal defendants would add unnecessary complexity and avoidable burdens on judicial resources. *See* Hall v. Du Pont (E. I.) de Nemours & Co., Inc. 345 F.Supp. 353, 383, (E.D.N.Y., 1972).

There is no indication in the legislative history of the Fair Housing Act that Congress intended to limit the Attorney General's normal enforcement discretion as the government's chief law officer. *See* United States v. Hunter, 459 F.2d 205, 216 n. 12 (4th Cir. 1972). *Cf.* United States v. Northside Realty Associates, 324 F.Supp. 287, 293 (N.D.Ga. 1971) (defendants "may not by deposition probe into the mental process by which the Attorney General exercised his discretion" under 42 U.S.C. § 3613); United States v. Gray, 315 F.Supp. 13, 24 (D.R.I.1970) (under the analogous enforcement provision of the Public Accommodations Title of the Civil Rights Act of 1964, 42 U.S.C. § 2000a–5, "the Attorney General's initial determination of reasonable cause . . . does not present a separate litigable issue."). *But cf.* Note, Discretion to Prosecute Federal Civil Rights Crimes, 74 Yale L.J. 1297 (1965).

Plaintiff urges that once a lawsuit moves from the "planning" to the "operational" stage, the Attorney General's

discretion is significantly reduced. The Fifth Circuit explicitly rejected such a theory in a suit for damages against the United States based on the Attorney General's refusal to prosecute an alleged criminal offense. Smith v. United States, 375 F.2d 243 (5th Cir.), cert. denied, 389 U.S. 841, 88 S.Ct. 76, 19 L.Ed. 2d 106 (1967). It relied upon the Attorney General's exclusive responsibility to conduct litigation in the light of national policy, prosecutorial resources, and the circumstances of the particular case. 375 F.2d 243, 247–248.

■ The *Smith* case differs from the present case in two significant respects. First, it involved an effort to exert private control over the process of criminal prosecution, the most insulated of all prosecutorial functions. *See, e. g.,* Connecticut Action Now, Inc. v. Roberts Plating Co., 457 F.2d 81, 86–87 (2d Cir. 1972). Second, plaintiff's interests in *Smith* were evidently opposed to important national policy on civil rights, while in this case plaintiff's interests are arguably consistent with national fair housing policy. Nevertheless, we decline to impose "operational" liability on the Attorney General in the absence of constitutional violations or explicit congressional authorization when there is an adequate alternative method of vindicating plaintiff's claims. *Cf.* United States v. Blue Chip Stamp Co., 272 F. Supp. 432, 438 (C.D.Cal.1967), aff'd per curiam sub nom. Thrifty Shoppers Scrip Co. v. United States, 389 U.S. 580, 88 S.Ct. 693, 19 L.Ed.2d 781 (1968).

■ There is no substance to plaintiff's charge that the Attorney General's approval of the consent order in United States v. Life Realty, Inc., 70–C–964, constitutes federal participation in racial discrimination in violation of the Fifth and Thirteenth Amendments. Reliance is placed on Gautreaux v. Romney, 448 F.2d 731 (7th Cir. 1971), Garrett v. City of Hamtramck, 335 F.Supp. 16 (E.D.Mich.1971), and Hicks v. Weaver,

302 F.Supp. 619 (E.D.La.1969), in which the Secretary of Housing and Urban Development was found to have violated the Fifth Amendment through his participation in racially discriminatory housing policies. In each of these cases involving the Department of Housing and Urban Development (HUD), the court stressed that department's extensive involvement in and control of the policies and programs in question.

In *Hicks* the court concluded that

"HUD was not only aware of the [racially segregated] situation in Bogalusa but it effectively directed and controlled each and every step in the program. Nothing could be done without its approval. HUD thus sanctioned the violation of plaintiffs' rights and was an active participant since it could have halted the discrimination at any step in the program." Hicks v. Weaver, 302 F.Supp. 619, 623 (E.D.La. 1969).

Similar findings were made by the Seventh Circuit in Gautreaux v. Romney, 448 F.2d 731, 739 (1971), and by the District Court in Michigan in Garrett v. City of Hamtramck, 335 F.Supp. 16, 27 (E.D.Mich.1971).

In this case the Attorney General stands in a position different from that of HUD. He does not control or disburse any funds. He has no authority, independent of the orders of this court, to supervise rental procedures. His litigation to enforce the Fair Housing Act does not constitute "participation" in the allegedly discriminatory activities of Lefrak.

■ When the Attorney General acts as lawyer for the government or any of its branches his discretion in conducting litigation, as in the case of attorneys appearing for private clients, is very broad. It is quite different from the discretion of an administrator or other official charged with carrying out substantive programs.

This distinction between lawyer and administrator is illustrated by Ely v. Velde, 451 F.2d 1130 (4th Cir. 1971). There the Law Enforcement Assistance Administration of the Department of Justice was required, in approving a federal grant to a state agency, to comply with the requirements of the National Environmental Policy Act (42 U.S.C. § 4321 et seq.) and the National Historic Preservation Act (16 U.S.C. § 470 et seq.). In *Ely,* unlike the case now before us, the Department of Justice was acting as an administrator, not as a lawyer for the government.

■ The Attorney General has taken successful legal action against Lefrak, eliminating the possibility of direct racial discrimination in the rental of apartments. (Under the terms of the pleadings and settlement in United States v. Life Realty, Inc., 70–C–964, there was no admission or adjudication that Lefrak had ever discriminated.) The Attorney General did not harm plaintiff's class by failing to prevent what are alleged to be more subtle forms of discrimination.

### III. CLAIMS AGAINST THE UNITED STATES OF AMERICA AND THE DEPARTMENT OF JUSTICE

■ Plaintiff seeks declaratory and monetary relief from the United States of America and the Department of Justice, and mandamus relief against defendant Department of Justice. Since these claims have the same basis as those against the Attorney General, they must be dismissed for failure to state a claim upon which relief can be granted. The government has not wronged plaintiff within the meaning of the Federal Tort Claims Act (28 U.S.C. § 1346(a)(2)) by failing to litigate as strenuously as plaintiff thinks it should.

### IV. CONCLUSION

The motion to dismiss of the Attorney General, the Department of Justice and the United States is granted.

So ordered.