UNITED STATES of America, Plaintiff,

v.

CARROLS DEVELOPMENT CORPORA-
TION and Triple Schuyler Rome
Corporation, Defendants.

No. 76–CV–170.

United States District Court,
N. D. New York.

July 7, 1978.

Dept. of Justice, Antitrust Division, New York City, for plaintiff; Bernard Wehrmann, Ralph Giordano, Erwin L. Atkins, New York City, of counsel.

Farber & Cohen, New York City, for defendants; Frank R. Cohen, New York City, of counsel.

Kiley, Feldmann, Whalen & Devine, Cazenovia, N.Y., for proposed intervenors, William D. Kiley, Cazenovia, N.Y., of counsel.

## MEMORANDUM–DECISION AND ORDER

MUNSON, District Judge.

In this civil antitrust action, a Proposed Consent Judgment has been agreed to by the Government and defendants Carrols Development Corporation and Triple Schuyler Rome Corporation, a wholly-owned subsidiary of Carrols Development Corporation. (Both defendants are collectively referred to herein as Carrols.) The Proposed Judgment has been filed with the Court, but before it can become effective, the Court must find that entry of the Judgment is in the public interest. Kallet Realty, Inc. and Kallet Theatres, Inc. (Kallet) and three of Kallet's managers [1] have moved to intervene in this action in order to oppose the entry of the Proposed Judgment.

### I.

In February, 1974, Carrols entered into a long-term lease agreement with Kallet whereby it acquired the three motion picture theatres operated by Kallet in the Greater Syracuse Area and the four motion picture theatres operated by Kallet in the Greater Utica Area. In connection with this agreement, Carrols entered into a covenant agreement with three of Kallet's managers whereby the managers, in consideration of annual payments of $25,000, $15,000, and $5,000, agreed not to engage in the motion picture theatre business in any area where Carrols operated a theatre. In March, 1974, Carrols acquired by lease the six motion picture theatres operated by Hallmark Releasing Corporation (Hallmark) in the Greater Utica Area. As a result of its acquisition of the Kallet and Hallmark

---

1. The three managers who have moved to intervene are Robert M. Kallet, Sidney J. Kallet, and Samuel LaBalbo.

theatres, Carrols controlled 72.5% of the theatres and 86% of the gross box office receipts in the Greater Syracuse Area in February, 1974 and 83.3% of the theatres and 80% of the gross box office receipts in the Greater Utica Area in March, 1974.

On April 23, 1976, the Government filed a Complaint, charging that the effect of these acquisitions was to substantially lessen competition in the purchase of licenses to exhibit feature motion pictures, in violation of § 7 of the Clayton Act. 15 U.S.C. § 18. The Complaint asked that Carrols be required to divest the Kallet and Hallmark theatres, and that it be enjoined, for a period of ten years, from acquiring any other theatres in the Greater Syracuse or Greater Utica Areas.

The Proposed Consent Judgment provides the Government with essentially all the relief it was seeking in this action. The Judgment requires Carrols to divest, by sublease or assignment, the twelve remaining Kallet and Hallmark theatres which it operates.[2] It specifies that, if Carrols has not divested all of these theatres with twenty-four months of the date of entry of the Final Judgment, a trustee is to be appointed by the Court for the purpose of divesting the remaining theatres during the next twelve months. The Proposed Judgment further provides that Carrols is to terminate its operation of any theatre not divested within such time periods, unless Government approval is obtained for its continued operation.

After its acquisition of the Kallet and Hallmark theatres in February and March of 1974, Carrols constructed three new theatre complexes, with a total of seven motion picture screens, in shopping malls in the Greater Syracuse Area and one new theatre complex, with three screens, in a shopping mall in the Greater Utica Area. The

Government did not seek the divestiture of these theatres in the Complaint, which it filed in April, 1976, and so Carrols' continued operation of these theatres will not be affected by entry of the Proposed Consent Judgment.

At the present time, Carrols operates nineteen of the twenty-four theatres in the Greater Syracuse Area and twelve of the thirteen theatres in the Greater Utica Area. If the divestitures, required by the Proposed Consent Judgment, are accomplished, the number of theatres held by Carrols in the Greater Syracuse and Greater Utica Areas will be reduced by approximately 15% and 75% respectively, and Carrols' gross theatre receipts from the Greater Syracuse and Greater Utica Areas will be reduced by approximately 23% and 56% respectively.

In accordance with the requirements of the Antitrust Procedures and Penalties Act (APPA), 15 U.S.C. § 16, the Proposed Consent Judgment and a Competitive Impact Statement were published in the Federal Register, and summaries of these documents were published in *The Washington Star* and *The Syracuse Post-Standard*. On August 11, 1977, Kallet submitted written comments pursuant to section (d) of the APPA, urging that the Proposed Judgment be altered to include a provision that Carrols be required to divest some or all of its new theatre constructions, in order to insure the successful divestiture of the Kallet and Hallmark theatres. The Government prepared a response in which it stated that the additional relief sought by Kallet was inappropriate and that the Proposed Judgment was in the public interest.

Kallet and its managers subsequently moved to intervene in this action pursuant to Fed. R. Civ. P., Rule 24(a), (b).[3]

---

**2.** Prior to agreeing to the Consent Judgment, Carrols had terminated its operation of one of the theatres covered by the February, 1974 lease agreement with Kallet. This theatre has since been leased to a third party.

**3.** Kallet and its managers also cite section (f)(3) of the APPA, 15 U.S.C. § 16(f)(3), in support of their motion to intervene. However, this provi-

sion merely codified existing law with regard to third-party participation, *United States v. Associated Milk Producers, Inc.*, 394 F.Supp. 29, 41, 43 (W.D.Mo.1975), *aff'd*, 534 F.2d 113 (8th Cir.), *cert. denied sub nom. National Farmers' Organization, Inc. v. United States*, 429 U.S. 940, 97 S.Ct. 355, 50 L.Ed.2d 309 (1976), and, therefore, movants will be able to intervene only if the provisions of Rule 24 are satisfied.

## II.

Rule 24(a), which deals with intervention as of right, provides in relevant part:

Upon timely application anyone shall be permitted to intervene in an action . . when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

## A.

While the nature of an "interest" sufficient to support intervention as of right has not been precisely defined, *Blake v. Pallan,* 554 F.2d 947, 952 (9th Cir. 1977), it is clear that such an interest must be direct, substantial, and significantly protectable. *Donaldson v. United States,* 400 U.S. 517, 531, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971); *United States v. Perry County Board of Education,* 567 F.2d 277, 279 (5th Cir. 1978); *Rios v. Enterprise Association Steamfitters Local Union # 638 of U.A.,* 520 F.2d 352, 357 (2d Cir. 1975); *In re Penn Central Commercial Paper Litigation,* 62 F.R.D. 341, 346 (S.D.N.Y.1974), *aff'd sub nom. Shulman v. Goldman, Sachs, & Co.,* 515 F.2d 505 (2d Cir. 1975). An interest which is remote or contingent is insufficient. *Air Lines Stewards & Stewardesses Association, Local 550 v. American Airlines, Inc.,* 455 F.2d 101, 105 (7th Cir. 1972); *Vazman, S.A. v. Fidelity International Bank,* 418 F.Supp. 1084, 1085–86 (S.D.N.Y.1976); *United States v. Atlantic Richfield Company,* 50 F.R.D. 369, 372 (S.D.N.Y.1970), *aff'd sub nom. Bartlett v. United States,* 401 U.S. 986, 91 S.Ct. 1233, 28 L.Ed.2d 527 (1971).

Kallet claims an interest in this action on the basis that it is the lessor in the lease agreement under which Carrols acquired seven motion picture theatres in the Greater Syracuse and Greater Utica Areas in February, 1974. Kallet apparently fears that Carrols may attempt to use the Proposed Consent Judgment to avoid its rent obligations under the lease. Kallet believes that the divestiture procedures set forth in the Proposed Judgment are impractical and unrealistic and that divestiture to a third party will not be successfully achieved. Kallet, therefore, speculates that Carrols may be required to terminate operation of some of the Kallet theatres, and in such event, may default on its rent payments. Kallet's interest in continued rental payments in such circumstances can properly be characterized as a remote or contingent interest. This purported interest is contingent upon the inability of Carrols and the trustee to divest the six Kallet theatres within three years of the date of entry of the Final Judgment. Moreover, the claimed interest is based upon the assumption that the Government will not exercise its right under the Consent Judgment to permit Carrols to continue to operate any theatres which Carrols and the trustee have been unable to divest. Thus, Kallet's interest in continued rent payments in the circumstances that may arise with implementation of the Consent Judgment is not a sufficiently direct and substantial interest to warrant intervention as of right in this lawsuit.

Kallet's managers claim a related interest in this action in that they fear that, if Carrols is forced to terminate operation of a theatre, Carrols may attempt to invoke a provision of the covenant agreement between Carrols and Kallet's managers excusing Carrols from its obligation to make payments to Kallet's managers in the event that it is dispossessed from the premises. As with regard to Kallet's interest in continued rental payments, this interest is contingent upon unsuccessful divestiture and the refusal of the Government to permit Carrols to continue to operate any remaining theatres. Therefore, this interest is not sufficient to support intervention as of right.[4]

---

4. It is unclear from their moving papers, but Kallet's managers may also be arguing that

Carrols might claim that the sublease or assignment, pursuant to the Judgment, of any

Kallet also claims an interest in the subject of the action as a potential competitor of Carrols for the purchase of feature motion picture exhibition licenses. Kallet speculates that if divestiture is unsuccessful and if Carrols is required to terminate its operation of the theatres, Kallet may be forced to operate the theatres again. This interest is contingent upon the occurrence of the events previously considered, and so is not a sufficiently direct and substantial interest to satisfy Rule 24(a)(2). Even if Kallet were presently a competitor of Carrols, it would not have a sufficient interest to intervene as of right in this lawsuit. Numerous courts have held that treble damage claimants do not have an interest cognizable under Rule 24(a)(2) in Government antitrust actions seeking injunctive relief. *United States v. National Bank & Trust Company*, 319 F.Supp. 930 (E.D.Pa.1970); *United States v. Atlantic Richfield Company, supra; United States v. Automobile Manufacturers Association, Inc.*, 307 F.Supp. 617 (C.D.Cal.1969), *aff'd sub nom. City of New York v. United States*, 397 U.S. 248, 90 S.Ct. 1105, 25 L.Ed.2d 280 (1970); *United States v. Blue Chip Stamp Company*, 272 F.Supp. 432 (C.D.Cal.1967), *aff'd sub nom. Thrifty Shoppers Scrip Co. v. United States*, 389 U.S. 580, 88 S.Ct. 693, 19 L.Ed.2d 781 (1968).

### B.

In addition to the failure of Kallet and its managers to demonstrate that their purported interests in the subject of this action are sufficiently direct and substantial to come within the meaning of Rule 24(a)(2), they have also failed to show that these interests will be impaired or impeded by entry of the Proposed Judgment. Since Kallet and its managers are not parties to the present action, the Proposed Judgment is not binding upon them. Moreover, the lease and covenant agreements are not abrogated by the Judgment, and Carrols is,

therefore, not barred from fulfilling its rent and payment obligations under these agreements. If Carrols should fail to satisfy such obligations, Kallet and its managers would be able to assert, in an appropriate tribunal, all legal rights and remedies they may have. *National Licorice Co. v. National Labor Relations Board*, 309 U.S. 350, 364–66 (1940); *United States v. CIBA Corporation*, 50 F.R.D. 507, 513 (S.D.N.Y.1970); *United States v. Carter Products, Inc.*, 211 F.Supp. 144, 148 (S.D.N.Y.1962).

Furthermore, by virtue of the fact that Carrols has voluntarily consented to the entry of the Proposed Judgment, it will not be able to rely upon the doctrine of impossibility of performance to avoid its obligations under the lease and covenant agreements. *General Aniline & Film Corp. v. Bayer Co.*, 305 N.Y. 479, 113 N.E.2d 844 (1953); *Lowenschuss v. Kane*, 520 F.2d 255, 265–67 (2d Cir. 1975); *Kama Rippa Music, Inc. v. Schekeryk*, 510 F.2d 837, 842–43 (2d Cir. 1975).

If Kallet and its managers are forced to assert their rights in another proceeding, they may be inconvenienced or financially burdened, to a certain extent, but this is not a sufficient reason to justify intervention as of right in an action brought by the Government for injunctive relief. *United States v. Associated Milk Producers, Inc.*, 534 F.2d 113, 116 n.3 (8th Cir.), *cert. denied sub nom. National Farmers' Organization, Inc. v. United States*, 429 U.S. 940, 97 S.Ct. 355, 50 L.Ed.2d 309 (1976); *Securities & Exchange Commission v. Everest Management Corporation*, 475 F.2d 1236, 1239 (2d Cir. 1972).

### C.

The Supreme Court's decision in *Cascade Natural Gas Corp. v. El Paso Natural Gas Co.*, 386 U.S. 129, 87 S.Ct. 932, 17 L.Ed.2d 814 (1967) does not provide support for the

Kallet theatre constitutes a dispossession within the meaning of the covenant agreement, thereby excusing Carrols from making further payments to Kallet's managers. However, this is a strained interpretation of the covenant agreement, and it, therefore, does not change this Court's view of the nature of the interest which Kallet's managers have.

position of Kallet and its managers with regard to intervention as of right. In *Cascade*, the Supreme Court held that the State of California and two private parties had the right to intervene in a Government antitrust suit, but in reaching this conclusion, it appears that the Supreme Court was, to a large extent, influenced by the fact that the original parties and the district court had disregarded a prior mandate of that Court, requiring divestiture without delay. Subsequent cases have regarded *Cascade* as *sui generis* and have limited its rationale to its peculiar fact situation. *United States v. Associated Milk Producers, Inc., supra*, 534 F.2d at 117; *United States v. Paramount Pictures, Inc.*, 333 F.Supp. 1100, 1102 (S.D.N.Y.), *aff'd sub nom. Syufy Enterprises v. United States*, 404 U.S. 802, 92 S.Ct. 79, 30 L.Ed.2d 37 (1971); *United States v. CIBA Corporation, supra*, 50 F.R.D. at 512; *United States v. Automobile Manufacturers Association, Inc., supra*, 307 F.Supp. at 619 n.3.

Accordingly, the Court holds that Kallet and its managers are not entitled to intervene as of right in this lawsuit.

### III.

Rule 24(b), which deals with permissive intervention, provides in relevant part:

> Upon timely application anyone may be permitted to intervene in an action . . . when an applicant's claim or defense and the main action have a question of law or fact in common. . . . In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

To the extent that Kallet and its managers may be able to assert antitrust claims against Carrols, there might be some common questions of law or fact between Kallet's claims and those of the main action. However, it appears that the primary interest of Kallet and its managers is to protect their rights to continued payments under the lease and covenant agreements. This interest does not raise any questions of law or fact in common with those involved in the main action.[5]

Moreover, the Court believes that allowing intervention in this lawsuit will "unduly delay or prejudice the adjudication of the rights of the original parties." Rule 24(b). Intervention by Kallet and its managers would defeat entry of the consent decree and would prolong this litigation. In such circumstances, courts have consistently denied permissive intervention by private parties in Government antitrust litigation. *United States v. Atlantic Richfield Company, supra*, 50 F.R.D. at 372; *United States v. Automobile Manufacturers Association, Inc., supra*, 307 F.Supp. at 620; *United States v. Blue Chip Stamp Company, supra*, 272 F.Supp. at 439.

Hence, in the exercise of the Court's discretion, the moving parties will be denied leave to intervene under Rule 24(b).

Moreover, the Court will deny Kallet and its managers the opportunity to participate in a more limited manner as *amicus curiae*. While it might be argued that such limited participation would be appropriate in the context of this case, the purposes for granting such participation have already been achieved here since the moving parties have set forth their views in considerable detail in briefs and affidavits filed with this Court as well as in written

---

5. The prevailing view is that there must be independent jurisdictional grounds to support permissive intervention under Rule 24(b). *Blake v. Pallan, supra*, 554 F.2d at 955; *Reedsburg Bank v. Apollo*, 508 F.2d 995, 1000 (7th Cir. 1975); *Babcock & Wilcox Company v. Parsons Corporation*, 430 F.2d 531, 540 (8th Cir. 1970). There would be independent jurisdictional grounds for an antitrust suit by Kallet and its managers, but there would not be independent jurisdictional grounds for the claims of Kallet and its managers under the lease and covenant agreements. The latter claims are based upon New York State law, and so this Court would have jurisdiction over such claims only if there was diversity of citizenship between the parties. The moving parties are all citizens of New York State, and Carrols, which has its principal place of business in New York, is, likewise, a citizen of this state. 28 U.S.C. § 1332(c).

comments submitted to the Government under the APPA. The Court does not feel that the submission of additional papers, at this time, would serve a useful purpose.

### IV.

 Before a Consent Judgment can be entered, it must be approved by the Court as being in the public interest. It is not the Court's function to determine whether this is the best possible settlement that could have been obtained, but rather the Court's duty is to determine "whether the settlement achieved is within the reaches of the public interest." *United States v. Gillette Company*, 406 F.Supp. 713, 716 (D.Mass.1975). The Court must "decide whether it is equitable to enter the decree as proposed." *United States v. Carter Products, Inc., supra*, 211 F.Supp. at 147. Section (e) of the APPA sets forth various factors which the Court may consider in making the public interest determination:

(e) Before entering any consent judgment proposed by the United States under this section, the court shall determine that the entry of such judgment is in the public interest. For the purpose of such determination, the court may consider—

(1) the competitive impact of such judgment, including termination of alleged violations, provisions for enforcement and modification, duration or relief sought, anticipated effects of alternative remedies actually considered, and any other considerations bearing upon the adequacy of such judgment;

(2) the impact of entry of such judgment upon the public generally and individuals alleging specific injury from the violations set forth in the complaint including consideration of the public benefit, if any, to be derived from a determination of the issues at trial.

15 U.S.C. § 16(e). *See also United States v. Associated Milk Producers, Inc.*, 394 F.Supp. 29, 44–46 (W.D.Mo.1975), *aff'd*, 534 F.2d 113 (8th Cir.), *cert. denied sub nom. National Farmers' Organization, Inc. v. United States*, 429 U.S. 940, 97 S.Ct. 355, 50 L.Ed.2d 309 (1976); *United States v. International Telephone & Telegraph Corporation*, 349 F.Supp. 22, 25 n.2 (D.Conn.1972), *aff'd sub nom. Nader v. United States*, 410 U.S. 919, 93 S.Ct. 1363, 35 L.Ed.2d 582 (1973); *United States v. Automobile Manufacturers Association, Inc., supra*, 307 F.Supp. at 620–21.

 After reviewing the briefs, affidavits and other papers submitted in this matter, the Court concludes that entry of the Proposed Consent Judgment is in the public interest. The divestiture of the theatres in question will result in a significant increase in competition for the purchase of licenses to exhibit feature motion pictures in the Greater Syracuse and Greater Utica Areas. Moreover, Carrols will lose the additional bargaining power that it had acquired as a result of the challenged acquisitions.

The Court further observes that various provisions have been included in the Consent Judgment to insure that successful divestiture is achieved. Under the Judgment, Carrols is required to make known the availability of the theatres by advertising and other appropriate means. It must also provide all necessary information to bona fide prospective purchasers and must permit such prospective purchasers reasonable access to inspect the facilities. Carrols is further required to submit periodic reports to the Government setting forth the steps it has taken to achieve divestiture. A Court-appointed trustee is to be given full power and authority to divest the theatres Carrols has not disposed of within twenty-four months.

The Court also notes that the Proposed Judgment provides essentially all the relief which the Government sought in its original Complaint, and that entry of the Judgment will save both the Government and the Court the time and expense of trial.

 Kallet and its managers have advanced two possible alternatives to the Proposed Consent Judgment. First, they suggest that Carrols be required to divest not only the Kallet and Hallmark theatres which it has acquired but also some or all of

its new theatre constructions. Secondly, they suggest that Carrols be permitted to retain the Kallet theatres and be forced to divest only the Hallmark theatres. The Court is of the opinion that the Department of Justice acted well within its discretion in not accepting these alternative proposals. With regard to the first suggested alternative, the Court believes that the Department of Justice had sufficient reason not to seek the divestiture of the newly-constructed theatres. The principal objective of § 7 of the Clayton Act is to prevent any corporation from acquiring, by means of merger, consolidation, or other type of acquisition, the stock or assets of any other corporation, where the transaction might have the effect of substantially lessening competition or tending to create a monopoly. However, this provision does not generally forbid corporate expansion which results from new construction. *See generally* 16A & 16B J. Von Kalinowski, *Business Organizations—Antitrust Laws and Trade Regulation* § 11.-01 *et seq.* (1978).[6] In addition, the Court believes that the Department of Justice had sufficient reason not to accept the second suggested alternative. The divestiture of only the Hallmark theatres would not provide all the relief sought by the Government in its Complaint. Moreover, this suggested alternative would not provide for any increase in competition in the Greater Syracuse Area and would not provide for as great an increase in competition in the Greater Utica Area as the Consent Judgment would. The Court feels that the Justice Department acted properly in rejecting these alternatives and concludes that the Proposed Consent Judgment, in its present form, is in the public interest.

**6.** The Government brought the present action only under § 7 of the Clayton Act. While the Government might have challenged, under § 2 of the Sherman Act, the market position obtained by Carrols as a result of its new constructions, it is questionable whether such an approach would have been successful. Section 2 does not condemn mere size or market dominance, but, rather, proscribes the possession of monopoly power in the relevant market combined with an intent to exercise that power.

Accordingly, all motions to intervene in this action are denied, and the Final Judgment, as stipulated to by the parties, is approved. The Clerk is directed to enter the Judgment at this time.

It is so ordered.

Monopoly power achieved as a result of superior skill, business acumen, natural advantages, economic or technological efficiency, or normal competitive activities does not violate this provision. *See generally* 16 & 16A J. Von Kalinowski, *supra*, § 7.01 *et seq.* In view of the uncertainties that would be involved in a § 2 action, the Justice Department acted well within its discretion in not pursuing such an avenue.