**UNITED STATES of America, Plaintiff,**

v.

**AMERICAN CYANAMID COMPANY, Defendant.**

**No. 60 Civ. 3857–CLB.**

United States District Court, S.D. New York.

Nov. 9, 1982.

U.S. Dept. of Justice, Antitrust Div. for U.S. Government.

Donovan, Leisure, Newton & Irvine, New York City, for American Cyanamid.

Dewey, Ballantine, Bushby, Palmer & Wood, New York City, for intervenor Dart Industries, Inc.

Howrey & Simon, Washington, D.C., for intervenor Melamine Chemicals Inc.

Thompson & Knight, Dallas, Tex., for amicus curiae Plastics Mfg. Co.

## MEMORANDUM AND ORDER

BRIEANT, District Judge.

Before the Court at this time are two applications for intervention pursuant to Rule 24, F.R.Civ.P. in which Melamine Chemicals Inc. ("MCI"), a producer of melamine, and Dart Industries Inc. ("Dart"), a manufacturer of plastic laminates which consumes melamine, seek to intervene in a motion by defendant American Cyanamid Company ("Cyanamid") to terminate the 1964 Consent Decree in this antitrust action.

On October 27, 1982, during oral argument on the motions, the Court by oral order, granted the motion of Plastics Manufacturing Co., Inc. ("PMI") to appear as an *amicus curiae* in this action.

Although a full description of this litigation's extended history is inappropriate for purposes of this application, a brief discussion is necessary.

The Justice Department filed this civil action on October 5, 1960 alleging that Cyanamid violated provisions of both the Sherman and Clayton Acts by monopolizing the markets for melamine and melamine-containing products. In 1964, the parties entered into the Consent Decree settling the case, which was approved by the late Hon. Richard H. Levet, a Judge of this Court. *United States v. American Cyanamid Co.,* 1964 Trade Cas. (CCH) ¶ 71,166 (S.D. N.Y.1964).

On August 9, 1982, after a fifteen month investigation, the Justice Department and Cyanamid filed a proposed stipulation with this Court, seeking an order terminating the 1964 Consent Decree.

Pursuant to the disclosure procedures of 15 U.S.C. § 16, Cyanamid duly published notice of the proposed termination in two consecutive editions of the *Wall Street Journal,* the *Journal of Commerce* and the *Chemical Marketing Reporter.* Interested parties were then given sixty days to respond to the Department of Justice concerning the proposed termination. As a result, MCI, Dart and PMI submitted objections to the proposed termination. Each now seeks to participate in the litigation on the district court level.

The Consent Decree has been amended on three occasions since 1964. Arguably, since it was issued, many of its provisions have become obsolete. Some have expired. However, Provision XI, the portion of the Consent Decree in which movants are interested, has remained in effect unchanged.

Provision XI requires Cyanamid:

" ... to purchase annually from other producers of melamine (with preference to United States producers) an amount of melamine equivalent to ... [Cyanamid's melamine requirements for the preceding year which it used] in the production of laminates in the United States provided that at any time after ten (10) years from such date, Cyanamid may petition to this Court to be relieved from this provision, such relief to be granted upon a showing by Cyanamid to the satisfaction of this Court that the effect of such relief will not be substantially to lessen competition or tend to create a monopoly in any line of commerce in any section of the country."

We need not consider at this time the interesting history of this provision, nor its motivation when presented to and adopted by the Court. We note however that Cyanamid had acquired Formica, Inc. ("Formica"), then and perhaps now the world's leading melamine laminate manufacturer, and a substantial purchaser of melamine.

In reliance on the Consent Decree's terms, MCI along with other venture capitalists, entered the melamine crystal production industry. With time, only MCI proved able to survive in the industry. To date it is the only domestic producer of melamine crystals other than Cyanamid. As a result, the practical effect of Provision XI is to provide MCI with substantial forced annual sales of melamine crystals to Cyanamid at prices limited only by the availability of foreign product.

In support of its application to intervene, MCI contends that the annual sales it receives pursuant to Provision XI are vital to its continued existence, and that termination of the Decree will end these sales and effectively force it out of business. This "will substantially lessen competition and . . . tend to create a monopoly [in Cyanamid]." (MCI's Memorandum in Opposition to Cyanamid's Motion to Terminate, p. 3).

MCI alleges that the Government has either "misconceived or ignored the true issues" in evaluating the propriety of the proposed termination of the Decree. (MCI's Memo in Opp., p. 14). Specifically, MCI contends that the Government has failed or refused to consider three relevant facts: (1) Cyanamid's ownership of Formica; (2) the effect of the proposed termination on the other customers and markets for melamine resins, laminates and other products that use melamine; and (3) Cyanamid's status as both a producer and consumer of melamine. (MCI's Memo in Opp., p. 15).

Proposed intervenor Dart, through its Ralph Wilson Plastics Division, produces plastic laminates in principal competition with Cyanamid's Formica division. Melamine resin, a basic raw material used in the production of plastic laminates, is produced from melamine crystals. As a result, producers of plastic laminates, such as Dart and PMI, are ultimately affected by any supply or demand change in the melamine crystal market.

Since Cyanamid and MCI are now the only domestic suppliers of melamine crystals, Dart contends that termination of the Consent Decree will have an anticompetitive impact on the plastic laminate industry because it will enable or encourage Cyanamid to withdraw completely from the melamine crystal market, in order to use its melamine production capacity internally to meet the production demands of Formica. Whether or not this is a valid contention does not resolve the issue of intervention.

Dart and PMI assert that foreign melamine producers are not reliable sources for melamine crystals and have little competitive influence on the melamine or melamine related markets. They allege that as a result of MCI's vigorous anti-dumping campaign against foreign melamine producers, foreign suppliers are unwilling to risk the expense and exposure of anti-dumping proceedings in order to offer melamine crystals at competitive prices to domestic purchasers. (PMI's Memo in Opp., p. 7). Here again whether or not this is a valid contention does not resolve the issue of intervention.

As a result of Cyanamid's supposed intention to withdraw from the melamine crystal market and the absence of reliable and adequate foreign suppliers, Dart alleges that *MCI* will inherit a monopolistic position in the melamine crystal market. Melamine resin producers, on whom Dart and PMI rely, will be forced, it is said, "to pay monopolistic, anti-competitive prices for raw and intermediate materials." (Affidavit of Ralph Wilson, sworn to October 20, 1982). When this cost increase is passed on to plastic laminate producers, they will "be unable to compete in the manufacture and marketing of plastic laminates and related materials with Cyanamid, which by virtue of . . . [its ownership of Formica] will be able to price squeeze competitors out of that line of commerce." (Affidavit of Ralph Wilson, sworn to Oct. 20, 1982, p. 3). Here again whether or not this is a valid contention does not resolve the issue of intervention.

In opposition to applicants' motions to intervene, the Justice Department asserts that it has fully examined and evaluated the applicants' contentions and has nonetheless concluded that termination of the Consent Decree is appropriate because it is no longer necessary to insure a competitive melamine market.

In support of this conclusion, Justice Department cites the fundamental changes in the melamine industry and the emergence of foreign producers as realistic, competitive sources of melamine crystals.

The immediate question presented here is solely whether MCI and Dart should be permitted to intervene in this action pursuant to Rule 24, F.R.Civ.P. as of right, as

they assert, or permissively, in the Court's discretion.

█ The Court notes at the outset that counsel for the parties have conceded on the record that Cyanamid's motion to terminate may be resolved by the Court essentially on the present record before it, without the introduction of significant additional evidence and without further hearings. Therefore, it seems implicit that intervention is sought here primarily to preserve the applicants' right to appeal this Court's ultimate determination of Cyanamid's motion to terminate the Consent Decree, and possibly also to present any additional information should the Court request same after further study.

In order for MCI or Dart to intervene as of right, they must satisfy Rule 24(a)(2), F.R.Civ.P., which states in relevant part that:

"(a) Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action: ... (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by the existing parties."

In Government antitrust consent decree hearings, it has been held consistently, with the rarest exception, that a private party will not be permitted to intervene as of right absent a showing that the Government has failed "fairly, vigorously and faithfully" to represent the public interest. *United States v. Ciba Corp.,* 50 F.R.D. 507, 513 (S.D.N.Y.1970); see also *United States v. Stroh Brewery Co.,* 1982–2 Trade Cas. (CCH) ¶ 64,782 (D.D.C.1982); *United States v. Carrols Development Corp.,* 454 F.Supp. 1215 (N.D.N.Y.1978); *United States v. Hartford-Empire Co.,* 573 F.2d 1 (6th Cir. 1978); *United States v. Mid-America Dairyman, Inc.,* 1977–1 Trade Cas. (CCH) ¶ 61,508 (W.D.Mo.1977); *United States v. Associated Milk Producers, Inc.,* 534 F.2d 113 (8th Cir.), *cert. denied sub nom. National Farmers'*

*Organization, Inc. v. United States,* 429 U.S. 940, 97 S.Ct. 355, 50 L.Ed.2d 309 (1976); *United States v. Paramount Pictures, Inc.,* 333 F.Supp. 1100 (S.D.N.Y.1971), *aff'd, Syufy Enterprises v. United States,* 404 U.S. 802, 92 S.Ct. 79, 30 L.Ed.2d 37 (1971); *United States v. Western Electric Co.,* 1968 Trade Cas. ¶ 72,415 (D.N.J.1968), *aff'd. sub nom. Clark Walter and Sons, Inc. v. United States,* 392 U.S. 659, 88 S.Ct. 2286, 20 L.Ed.2d 1348 (1968).

The leading exception to the numerous cases denying intervention as of right in matters such as this is *Cascade Natural Gas Corp. v. El Paso Natural Gas Co.,* 386 U.S. 129, 87 S.Ct. 932, 17 L.Ed.2d 814 (1967). In *Cascade,* the Court permitted parties to intervene as of right where it found that the Government, in entering an antitrust consent decree, had compromised the interest of the public and of the proposed intervenors allegedly in direct contradiction of the Supreme Court's prior mandate to the contrary. Subsequent decisions have limited the scope of *Cascade* to its rather unusual presumed facts, which are not present in this litigation. *United States v. Ciba, supra; United States v. Paramount Pictures, Inc., supra; United States v. American Telephone and Telegraph Co.,* 552 F.Supp. 131 at 218, n. 362 (D.D.C.1982).

In light of the present record before the Court, there is no basis whatever to find that the Government has failed in any respect to pursue and represent the public interest in this litigation in good faith. Accordingly, intervention as of right is inappropriate.

█ Pursuant to Rule 24(b)(2), F.R. Civ.P.:

"Upon timely application anyone may be permitted to intervene in an action: ... (2) when an applicant's claim or defense and the main action have a question of law or fact in common .... In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."

The ultimate issues now posed in this case are (1) whether termination of the Consent Decree will lessen competition, or (2) tend to create a monopoly, or (3) enhance or detract from the current competitive balance of the melamine crystal and melamine related markets.

In determining that question, the Court must consider MCI and Dart's respective claims that termination will have an undue or unlawful anti-competitive impact on the respective melamine markets of concern to them. Without question, such claims are directly related to the subject matter of this litigation.

As a practical matter, permissive intervention, if granted here, will not unduly delay or prejudice the original parties to this litigation. The time consuming and expensive discovery demands often asserted by intervening parties will not be endured here. Applicants seek only to preserve their right to appeal an adverse decision in this action, and to participate in such further proceedings as this Court may direct on its own motion. Any attendant delay attributed to such an appeal of this Court's ultimate determination would not be unduly prejudicial and at least in theory would be in accord with fundamental concepts of justice.

As held in *United States v. American Telephone and Telegraph Co., supra,* the court has considerable latitude in assuring that the public interest is served in antitrust consent decree hearings:

> "The procedures required for the protection of the public interest necessarily depend upon many different circumstances—which is precisely why the Congress left to the courts' discretion the means by which their public interest responsibilities would be effected." at 216.

In the *Telephone* case, *supra,* the court permitted numerous parties to intervene in order to preserve, among other things, the applicants' right to appeal the entry of the proposed consent decree.

Although the circumstances of this case do not approach the complexity of the *Telephone* litigation, the case before this Court is an unusual one. Although MCI was not granted specific rights in the Consent Decree, it may be said to have relied upon and profited from its perpetual provisions. Surely a Court of Equity cannot ignore this history, although we do not suggest MCI thereby gained any vested rights in its continuance. The antitrust laws protect competition, not competitors. See *Buffalo Courier-Express, Inc. v. Buffalo Evening News,* 441 F.Supp. 628, 646 (W.D.N.Y.1977), *rev'd. on other grounds,* 601 F.2d 48 (2d Cir.1979) and cases cited thereunder. Dart's position is essentially similar, although perhaps adverse to MCI in the market.

In light of the unusual factual setting, and the close relationship between the applicants' claims and the main issue now before the Court, I conclude that the applicants should each be granted permissive intervention as parties in this action.

Applicants' motions to intervene are granted in the Court's discretion pursuant to Rule 24(b)(2), F.R.Civ.P., conditioned upon their continued adherence, respectively, to all procedural stipulations and agreements offered at the hearing. See Transcript of October 27, 1982.

So Ordered.